Allene Bruce STOREY et vir, Appellants,

v.

Minnie Bruce HAYES et al., Appellees.

No. 14812.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 12, 1969.

Ernest Morgan (On Appeal Only), San Marcos, for appellants.

Roger W. Wooldridge, San Antonio, Sam L. Darden, Robert Wehmeher, Bandera, for appellees.

BARROW, Chief Justice.

A will contest case. Appellant Allene Bruce Storey, a daughter of J. H. Bruce, deceased, brought this suit to set aside the probate of a will and codicil on the grounds of undue influence by her sister, appellee Minnie Bruce Hayes, and for lack of testamentary capacity. The jury found that testator had testamentary capacity at the time of the execution of the will and at the time he executed the codicil. It also found that testator was not acting under the un-

due influence of Minnie Bruce Hayes at the time of executing either instrument. A take-nothing judgment was entered on this verdict, whereby the will and codicil were in all things upheld, approved and confirmed.

Testator was married to Mrs. Ella Mansfield Bruce in 1900 and of this, his only, marriage three children were born: Minnie, H. L. (Buster), and Allene. Mrs. Bruce died in 1946, leaving an estate consisting primarily of approximately 2000 acres of ranch land, of which about one-third was her separate property and the remainder community property. Under her will, testator, J. H. Bruce, was granted a life estate in all said property with the remainder to be divided equally among their three children. The record is uncontradicted that the stated intentions of Mr. and Mrs. Bruce were that upon the death of both all their property was to be divided equally among said children. Apparently, the first will executed by Mr. Bruce was on January 28, 1964, when he was eighty-seven years of age. By this will he endeavored to divide the entire estate, both separate and community, into three equal parts, but specifically designated the part of the ranch each child was to receive.[1] This worked to the apparent disadvantage of appellant, as her part consisted largely of the separate property of her mother, and thereby she was taking very little from the community property. This will also contained a forfeiture clause in the event a devisee contested the will or refused to execute the necessary partition deeds. On September 19, 1964, Mr. Bruce executed a codicil to this will whereby virtually all of appellant's one-third interest under his will of January 28, 1964, was given to appellee Minnie Bruce Hayes. Testator died in 1966. The other devisee, Buster Bruce, who was named independent executor under said will, filed both instruments for probate but refused to have any part of this will contest, other than to express the desire to the trial court, outside the presence of the jury, that the estate be divided into three equal parts. Appellant Allene Bruce Storey will be hereinafter referred to as contestant and appellee Minnie Bruce Hayes will be referred to as proponent.

Contestant asserts three points: 1. The trial court erred in excluding evidence tending to show that the testator was of unsound mind and under undue influence at the times in question. Under this point, contestant complains of the refusal to admit testimony from two of her witnesses, Henry Lee Mansfield and Laura Barksdale, to the effect that each was of the opinion that testator was of unsound mind on the occasions in question. 2. The trial court erred in admitting opinion evidence from proponent's witnesses to the effect that testator had mental capacity to perform the acts in question. 3. The trial court erroneously excluded evidence from a druggist of various medicines purchased by testator subsequent to the execution of the codicil in question.

Mr. Mansfield was a nephew and lifetime neighbor of testator. He visited testator frequently on Sunday mornings while Mrs. Mansfield attended church. Based on this long acquaintanceship and frequent observations, Mansfield testified that testator's health began to deteriorate in the late 1950's or early 1960's; it was difficult to hold a conversation with testator; testator had a poor memory and would repeat questions during the same conversation; and testator didn't remember the planting seasons. He testified testator wasn't mentally capable at all times of knowing or understanding the nature and effect of his acts, and that testator was not capable at all times during July and September, 1964, of knowing or understanding the nature and effect of his acts. However, the trial court refused to permit Mansfield to testify before the jury that testator was of unsound mind at such times.

Mrs. Laura Barksdale had known testator since 1949, in that her sister had been

---

1. There were three other minor legatees under his will, who are not involved in this suit.

his housekeeper for eleven years. After her sister's death, Mrs. Barksdale was employed in October, 1964, and worked for testator off and on until April, 1965. She testified that testator was weak and all crippled with arthritis. Some days he was normal and some days he just wasn't himself. In explanation, she testified that he was just a little "mentally off or unbalanced." She related two occasions when testator imagined fifteen young men coming to look for work, and other people driving up in cars to steal his saddles. She testified that he was not capable of tending to business or anything. By bill of exception she testified that he was of unsound mind in October, 1964.

Contestant's second point relates also to the question of the admissibility of opinion testimony as to the testamentary capacity of testator and therefore should be considered with the first point. Contestant complains of the admission of testimony from eight lay witnesses to the effect that testator had the capacity to know and understand the effect of his acts. Such evidence was admitted largely without objection and the error, if any, has been preserved, in contestant's amended motion for new trial, only as to the witnesses C. D. Myers and Mrs. Fred Briggs. Miller v. Miller, 274 S.W.2d 762 (Tex.Civ.App.— San Antonio 1954, writ ref'd); Rules 320 and 374, Texas Rules of Civil Procedure; Appellate Procedure in Texas, § 8.2.

Mr. Myers knew testator from 1958 until the latter's death, in that he visited testator four to six times a year with a man who had a grass lease on part of testator's ranch. On such occasions he would spend from thirty minutes to an hour in general conversation with testator. Myers was permitted to testify, over contestant's objection, that testator knew the nature and extent of his property. He was only a minor witness on behalf of proponent because of his few contacts with testator as compared to her other witnesses.

Mrs. Briggs, along with her husband who died in January, 1965, witnessed both the will and codicil and therefore was a very important witness. She and her husband were neighbors of testator and went to the home of testator on each occasion to witness the instrument in response to a telephone call from proponent. Proponent had lived in the home with testator after the death of her husband in 1953 and took care of much of his business. Mrs. Briggs testified by deposition that her husband had been a close friend of testator for over thirty years before the Briggs were married. Through this friendship she became acquainted with testator about fifteen years before his death, and she and her husband socially visited him about every two weeks. The will was executed about 7:00 p. m. in their presence, as well as in the presence of Glendon Roberts, Esq., who had prepared the will. After a few pleasantries were exchanged, the will was signed and Mr. Roberts notarized same. They visited with testator another thirty minutes and left. In response to a question regarding testator's mental capacity, Mrs. Briggs testified that her husband always hoped he would be as well mentally at that age as testator. Further, that he realized he was executing a will and that he had the mental capacity to understand the nature and extent of his property. Also that he had the capacity to know his children as well as the objects of his bounty and their claims upon him.

The codicil was witnessed by Mr. and Mrs. Briggs on the hood of the Briggs automobile, in that they were on the way to a party when proponent called. Testator came out to the car and signed the codicil at that time. There was little conversation because of their hurry. Mrs. Briggs testified without objection that his mental condition seemed as it had been. Also, in her opinion, testator had the capacity to understand the nature and extent of his properties.

It is settled that upon a proper predicate or foundation, all witnesses, whether attesting witnesses, ordinary lay witnesses, or expert witnesses, may ex-

press their opinion as to the mental condition of the testator. Brown v. Mitchell, 88 Tex. 350, 31 S.W. 621, 36 L.R.A. 64 (1895). However, no witness may express an opinion as to the legal capacity of the testator to execute or make a will. Therefore, it is necessary to observe a basic distinction between an expression of an opinion as to the mental condition of a testator and his legal capacity. Brown v. Mitchell, supra; Lindley v. Lindley, 384 S.W.2d 676 (Tex. Sup.1964); Adamson v. Burgle, 186 S.W.2d 388 (Tex.Civ.App.—San Antonio 1945, writ ref'd w. o. m.); Marshall, Opinion Testimony on Testamentary Capacity, XXV Texas Bar Journal 385.

Such distinction is easier stated than observed and has resulted in much confusion in the authorities. In Carr v. Radkey, 393 S.W.2d 806 (Tex.Sup.1965), the Court considered at length the confusion in the cases regarding the scope of opinion testimony as to testamentary capacity. After analyzing many cases the Court said: "Our holding is that a witness may not be asked whether a testator had the mental capacity to make and publish a will because, under Brown v. Mitchell, whether a person has mental capacity to execute a will involves a legal definition and a legal test. A witness may be asked, assuming he knows or is a properly qualified expert, whether the testator knew or had the capacity to know the objects of his bounty, the nature of the transaction in which he was engaged, the nature and extent of his estate, and similar questions."

■ It is seen that the type of questions which were propounded to proponent's witnesses are permitted under the holding in Carr v. Radkey, supra. There is no complaint that either of such witnesses lacked sufficient personal contact with the testator to reasonably form such opinion from first-hand knowledge. Therefore, contestant's second point is without merit.

A more difficult question is presented as to the first point, in that Carr v. Radkey, supra, cited with approval the case of

Chambers v. Winn, 137 Tex. 444, 154 S.W. 2d 454 (1954), wherein it was held that witnesses who had sufficient personal contacts with testator might give their opinion as to whether the testator was of unsound mind. Under such rule, the witness Mansfield, who had considerable personal contact with testator at or near the times the questioned instruments were executed should have been permitted to express his opinion. No abuse of discretion is shown as to the witness Mrs. Barksdale in that her close observation of testator did not begin until about six weeks after the codicil was executed and the inquiry related to such time.

It is our duty under Rule 434, T.R.C.P. to examine the entire record to determine if the error in excluding Mansfield's opinion amounted to such a denial of contestant's rights as was reasonably calculated to cause, and probably did cause, rendition of an improper judgment. Pittman v. Baladez, 158 Tex. 372, 312 S.W.2d 210 (1958). There were twenty witnesses and the statement of facts consists of over 800 pages. Although there is no point complaining of the sufficiency of the evidence to support the verdict of the jury, it may be fairly stated that such issues were vigorously disputed. Mr. Roberts, who prepared the will pursuant to the instructions of proponent's brother-in-law, testified that he carefully went over the will with testator before it was executed. Also, the testator personally advised such attorney of the change to be made by the codicil. This attorney, testator's treating physician, several business associates and personal friends, all testified from their personal observation that testator had the mental capacity to know the objects of his bounty, the nature of the transactions in which he was engaged as well as the nature and extent of his property.

To the contrary, contestant produced testimony, in addition to that of Mansfield and Mrs. Barksdale, from a niece of testator and, most significantly, from testator's son, Buster, to the effect that testator was

not mentally capable of transacting business at the time the instruments were executed. In addition, there was the obvious fact that, for reasons completely unknown, testator in executing this codicil had changed his declared testamentary intentions which he had substantially followed in his will executed only eight months previously. This fact, coupled with testator's advanced age and many physical infirmities, as well as the opportunity and participation by proponent individually and through her own relatives in the preparation of such instruments made difficult fact issues. These fact issues were resolved by the jury to uphold the will and codicil.

We cannot say from an examination of the entire record that the error in not permitting Mansfield to express his opinion that testator was of unsound mind was reversible error under Rule 434, supra. This conclusion is based primarily on two facts. In the first place, Mansfield's opinion was obvious to the jury from his other testimony. In the second place, he was permitted to state that testator was not mentally capable of knowing or understanding the nature and effect of his acts at the times in question. Such question was in the terms of the jury definition of "testamentary capacity" and therefore should have been of more significance than the undefined conclusion that testator was of unsound mind. We therefore overrule contestant's first point.

Contestant's third point is also without merit. By same she complains of the exclusion of testimony from the druggist as to numerous prescriptions filled for testator between October, 1964, and the time of his death in 1966. The druggist was permitted to testify to all the prescriptions furnished testator between 1962 and October, 1964, as well as to the contents of same. In addition, Dr. Meador testified fully as to the physical condition of testator; drugs prescribed for him, office visits by him, and house calls made to see testator through November 30, 1964. The trial court did not err in excluding the testimony of the druggist as to the prescriptions furnished after the codicil was executed. In any event such exclusion was harmless error.

The judgment is affirmed.