**In re the ESTATE OF Albert L. BLAKES, Deceased.**

**No. 05–02–00160–CV.**

Court of Appeals of Texas, Dallas.

May 1, 2003.

Richard H. Kelsey, Kelsey, Kelsey & Collister, Denton, Joe L. Orr, Orr & Orr, Fort Worth, for Appellant.

Richard Kevin Spencer, The Hartnett Law Firm, Dallas, for Appellee.

Before Justices MOSELEY, LANG, and LAGARDE.[1]

## OPINION

Opinion By Justice LAGARDE (Retired).

Ronald J. Krause, as Independent Executor of the Estate of Albert L. Blakes,

---

1. Justice Ed Kinkeade was a member of the submissions panel before his retirement from the Court on November 18, 2002. He did not participate in the issuance of this opinion.

The Honorable Sue Lagarde, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, is sitting by assignment and has reviewed the briefs and record in this case.

deceased, appeals a judgment following a jury verdict setting aside Albert L. Blakes's last will and testament. In eight issues, Krause contends there is no or insufficient evidence to support the jury findings of lack of testamentary capacity and undue influence and it was prejudicial error to allow certain deemed admissions to be read to the jury. Concluding Krause has failed to show any reversible error, we affirm the trial court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Albert Blakes, a physician, died just after midnight on May 26, 1999 from malignant melanoma, at the age of sixty-two. At the hospital the afternoon before his death, Blakes signed a will presented to him by his friend, William Podsednik. Among other things, the will purported to leave Blakes's interest in his medical practice to his partner Dr. Sharon Rae and the remainder of his estate to his three biological children. The will left nothing to his wife Alyce and stepson Richard Blakes.

Blakes separated from his wife Alyce twelve years before his death. Despite the separation, Blakes continued to provide Alyce with financial support. Additionally, Blakes maintained his relationship with his stepson Richard and treated him as one of his children. Blakes was diagnosed with malignant melanoma about one year before his death. During that year, Blakes underwent various treatments for his cancer. By January or February of 1999, Blakes's condition was classified as stage four, indicating the cancer had spread within his body. His condition continued to deteriorate and on May 20, 1999 he was admitted to the hospital suffering from confusion and dehydration.

On May 25, 1999, Podsednik was informed by Reeta Parlin (a nurse from Blakes's medical practice with whom Blakes was romantically involved) that Blakes wanted to make a will. Podsednik testified he was generally aware of how Blakes wanted to dispose of his property from conversations during past years. Podsednik specifically asked Blakes what he wanted to do about Richard to which Blakes responded, "nothing." Podsednik relayed what he believed to be Blakes's wishes to attorney Jack Garbo.

Based on information provided by Podsednik, Garbo prepared a will for Blakes. Podsednik then brought the will to the hospital for Blakes's signature. Podsednik, two witnesses, and a notary were present when Blakes executed the will in the afternoon. During the will execution, Blakes got tired and asked to finish the next day. Parlin and Podsednik urged Blakes to continue and he completed the signing. Garbo never spoke directly to Blakes about the will he prepared and did not go to the hospital to supervise its execution.

Alyce filed a contest to the will after it was admitted to probate. A jury found that Blakes lacked testamentary capacity and was subject to undue influence when he executed the will. In accordance with the jury's verdict, the trial court set aside the will, removed Krause as the independent executor, and canceled Krause's letters testamentary. Krause appeals.

DISCUSSION

In his first issue, Krause contends there was no evidence to support the jury's finding that Blakes lacked testamentary capacity at the time he executed the will. In order to properly preserve a legal sufficiency challenge for appeal after a jury trial, an appellant must do one of the following: (1) move for an instructed verdict; (2) move for judgment notwithstanding the verdict; (3) object to the submission of a jury question; (4) move to disregard the jury finding; or (5) move for

a new trial. *See T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 220 (Tex.1992). Our review of the record reveals that Krause took none of these actions in the trial court. Accordingly, he has waived his challenge to the legal sufficiency of the evidence as it relates to the jury finding on testamentary capacity. We therefore resolve Krause's first issue against him.

■ In his fifth, sixth, seventh, and eighth issues, Krause contends it was prejudicial error to allow certain deemed admissions to be read to the jury because they (1) were conclusory; (2) addressed ultimate jury issues; (3) lacked proper proof of service; and (4) were not probative of the issues to be decided. At trial, Krause made no objection when the deemed admissions were read to the jury. Accordingly, he has waived these issues on appeal. *See* Tex.R.App. P. 33.1.

■ In his third issue, Krause challenges the factual sufficiency of the evidence to support the jury's finding that Blakes lacked testamentary capacity.[2] We examine the entire record when analyzing a factual sufficiency challenge to a jury finding. *Tex. Farmers Ins. Co. v. Cameron,* 24 S.W.3d 386, 392 (Tex.App.-Dallas 2000, pet. denied). We will set aside a finding only if the evidence supporting the finding is so weak or the verdict so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

■ A testator has testamentary capacity when he has sufficient mental abili-

ty to understand he is making a will, the effect of making a will, and the general nature and extent of his property. *Bracewell v. Bracewell,* 20 S.W.3d 14, 19 (Tex. App Houston [14th Dist.] 2000, no pet.). He must also know the natural object of his bounty, the claims upon them, and have sufficient memory to collect in his mind the elements of the business transacted and hold them long enough to form a reasonable judgment about them. *Id.* In a will contest, the pivotal issue is whether the testator had testamentary capacity on the day the will was executed. *Lee v. Lee,* 424 S.W.2d 609, 611 (Tex.1968). However, evidence of the testator's state of mind at other times can be used to prove his state of mind on the day the will was executed provided the evidence demonstrates a condition affecting his testamentary capacity was persistent and likely present at the time the will was executed. *Croucher v. Croucher,* 660 S.W.2d 55, 57 (Tex.1983).

■ The medical records and testimony indicate that Blakes had reached the terminal stage of his illness and was admitted to the hospital in a state of confusion and dehydration just five days before he executed the will. Dr. James Grigson, an expert witness hired by Alyce, testified that Blakes showed signs of confusion from the time he was admitted up until the time of his death, although he did show some improvement after he was rehydrated.[3] Nurses' notes indicated that he was "confused" at about 5:00 a.m. on the day he signed the will. Dr. Grigson also testified that based on his review of the medical records, Blakes's depression, pain, his mental state, confusion along with the

---

**2.** Krause preserved this issue by raising it in a motion for new trial. *See* Tex.R.Civ. P. 324(b).

**3.** For the first time on appeal, Krause contends Grigson's testimony is not probative evidence because it did not meet the requirements of *E.I. du Pont de Nemours & Co. v.*

*Robinson,* 923 S.W.2d 549 (Tex.1995), and its progeny. Because Krause failed to object to Grigson's testimony at trial, and did not otherwise raise this issue in the trial court, it is waived. *See* Tex.R.App. P. 33.1(a.)

spread of his cancer, the liver failure, and anemia made it impossible for Blakes to have testamentary capacity on the day the will was executed.[4]

Dr. Peter Beitsch, Blakes's treating physician, testified he visited Blakes in the hospital about once or twice a day. Beitsch noted Blakes was on a fairly regular dose of narcotics to keep him out of pain but pain medications were withheld by request the morning before the will was executed. Beitsch indicated that during his visit at 9:00 a.m. or 10:00 a.m. on May 25, Blakes knew who he was and where he was, although he was weaker and more tired than before. Beitsch also testified that during the last hours of his life, Blakes became confused and disoriented.

The witnesses and the notary testified they had a very limited recollection about Blakes's execution of the will. Although one witness remembered exchanging pleasantries with Blakes and that he recognized her, no one recalled any details of the will execution. Podsednik testified that he summarized the contents of the will for Blakes and then watched Blakes flip through the pages before signing. Although there was testimony concerning certain errors in the will, including an incorrect statement that it was being signed in Arlington, there was no evidence that Blakes asked any questions about the will after he purportedly reviewed it. There was additional testimony that Blakes recognized and visited with family on the day he executed the will.

After reviewing the record, we cannot conclude the jury finding of lack of testamentary capacity was so weak as to be unjust. Even disregarding the deemed admissions of which Krause complains, there is ample evidence from which a jury could conclude that Blakes's physical and mental condition had deteriorated to a point where he no longer had testamentary capacity. We therefore decide Krause's third issue against him.

Because we conclude there is sufficient evidence to support the jury finding that Blakes lacked testamentary capacity, we need not address Krause's second and fourth issues regarding the jury's finding on undue influence. *See* TEX.R.APP. P. 47.1.

We affirm the trial court's judgment.

4. We disagree with Krause's contention that Grigson's testimony on whether Blakes lacked testamentary capacity was ambiguous. When read in its entirety, Grigson's testimony clearly indicates that Blakes lacked testamentary capacity.