Jason Matthew LONG, Joshua Ray Long, Jared Brandon Long, and Carol Sue Long, Appellants

v.

Sheila J. LONG, Community Survivor of Ray Allen Long, Deceased, and Designated Independent Executrix Under Purported Will, Appellee.

No. 05–05–00234–CV.

Court of Appeals of Texas, Dallas.

July 10, 2006.

C. Tony Wright, The Wright Law Firm, P.L.L.C., and Robert E. Fitzgerald, Dallas, for Appellant.

George Ivan Alexander, Attorney At Law, Greenville, for Appellee.

Before Justices WHITTINGTON, RICHTER, and FRANCIS.

## OPINION

Opinion by Justice FRANCIS.

This appeal involves a will contest. Appellants Jason Matthew Long, Joshua Ray Long, Jared Brandon Long, and Carol Sue Long are the sons and ex-wife of the deceased, Ray Allen Long; appellee Sheila J. Long was Ray's wife at the time of his death and offered the will for probate that is in dispute. After a trial, the probate court admitted the will to probate. In three issues, appellants contend the will is invalid and improperly conflicts with a prior divorce decree. We affirm.

Carol and Ray married in 1964. In 1998, Carol learned that Ray was having an affair with appellee, and the couple divorced in February 2000 but the decree was not signed until September 2000. As part of their agreed divorce decree, Ray was to designate Carol as his beneficiary on "all current financial accounts and life insurance policies through May 2000," at which time Ray was to designate his three adult sons as "such beneficiaries."

In September 2001, Ray was diagnosed with bone marrow cancer. Seven weeks later, he married appellee. Over the next fifteen months, Ray underwent treatment, including a donor stem cell transplant in April 2002. During the transplant procedure, Ray was hospitalized for about three weeks. In May 2002, fifteen days after his discharge from the hospital, Ray executed a new will naming appellee as independent executrix. In his will, Ray left two life insurance policies to appellee and his retirement account to his sons. When Ray retired a few months later, however, he rolled over his retirement funds into an Ameritrade account and designated Sheila as beneficiary. Ray died in December 2002.

Appellee filed an application to probate the May 2002 will. Ray's sons contested the will, asserting Ray did not have testamentary capacity to execute the will and appellee had exercised undue influence over him. In addition, the sons and Carol brought separate claims for, among other things, breach of contract stemming from the provisions in the 2000 divorce decree.

After a trial, the probate judge admitted the will to probate and made findings to support conclusions that Ray was of sound mind and testamentary capacity and was

not under the undue influence of any other person at the time he executed his will. After hearing evidence on appellants' separate claims, the judge entered a take-nothing judgment. This appeal ensued.

In their first issue, appellants question whether Ray had testamentary capacity to execute the will. Appellants do not provide a standard of review but do assert the "weak evidence" cannot support a finding that Ray was competent when he executed his will. Accordingly, we will treat this issue as a challenge to both the legal and factual sufficiency of the evidence.

An appellate court conducts a legal and factual sufficiency review of a trial court's findings by the same standards applied when reviewing evidence supporting a jury's verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). Appellee, as proponent of the will, had the burden of proving testamentary capacity. *See Croucher v. Croucher*, 660 S.W.2d 55, 57 (Tex.1983).

When a party challenges the legal sufficiency of an adverse finding on an issue on which he did not have the burden of proof, he must demonstrate on appeal that no evidence supports the adverse finding. *Id.* We view the evidence in the light most favorable to the verdict, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex.2005). We sustain a no evidence issue only if there is no more than a mere scintilla of evidence proving the element of the claim. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 520 (Tex.2002). Evidence does not exceed a scintilla if it is " 'so weak as to do no more than create a mere surmise or suspicion' " that the fact exists. *Kroger Tex. Ltd. Partnership v. Suberu*, 49 Tex. Sup.Ct. J. 592, 2006 WL 1195331, at *3 (May 5, 2006).

When a party without the burden of proof challenges the factual sufficiency of the evidence to support an adverse finding, the party must demonstrate that there is insufficient evidence to support the adverse finding. *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.* 835 S.W.2d 190, 196 (Tex.App.-Austin 1992, no writ). We consider and weigh all of the evidence and set aside the verdict only if the evidence that supports the finding is so weak as to be clearly wrong and manifestly unjust. *See Brown v. Traylor*, No. 01–04–01091–CV, 2006 WL 1098265, at *12 (Tex. App.-Houston [1st Dist.] Apr. 27, 2006, no pet.) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) and *Bay, Inc. v. Ramos*, 139 S.W.3d 322, 329 (Tex.App.-San Antonio 2004, pet. denied)). In making this review, we are not a fact finder. We will not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if a different answer could be reached. *Bright v. Addison*, 171 S.W.3d 588, 595–96 (Tex.App.-Dallas 2005, pet. dism'd). The amount of evidence necessary to affirm a judgment is far less than necessary to reverse. *Id.*

A testator has testamentary capacity when he has sufficient mental ability to understand he is making a will, the effect of making a will, and the general nature and extent of his property. *In re Estate of Blakes*, 104 S.W.3d 333, 336 (Tex. App.-Dallas 2003, no pet.). He must also know his next of kin and the natural objects of his bounty, the claims upon them, and have sufficient memory to collect in his mind the elements of the business transacted and hold them long enough to form a reasonable judgment about them. *Id.*

The pivotal issue is whether the testator had testamentary capacity on the

day the will was executed. *Id.* However, evidence of the testator's state of mind at other times can be used to prove his state of mind on the day the will was executed provided the evidence demonstrates a condition affecting his testamentary capacity was persistent and likely was present at the time the will was executed. *Id.*

■ Sheila testified that when Ray was diagnosed with cancer in September 2001, doctors believed they could put it in remission for ten years or more. The following month, he underwent chemotherapy and prepared for an auto-stem cell transplant in which Ray's own cells would be used. However, a bone marrow biopsy revealed that Ray's cancer level was not low enough, and doctors then planned the donor stem cell transplant, which Sheila said could allow for a "permanent recovery."

In preparation for the procedure, Ray was on high-dosage chemotherapy and radiation, which made him weak, but Sheila testified "there was never a time when he didn't know who I was in the hospital." In addition, Ray updated friends and family about his health through e-mail. Several of the e-mails were admitted into evidence. When he was released from the hospital, Ray was taking anti-rejection and anti-viral medications. She said Ray was "doing really well" and was "gaining weight and recovering nicely."

A few weeks after he returned home, Ray drafted his will on his computer. Sheila testified that Ray understood what he was doing, the extent of his property, who his heirs were, and how his property was to be distributed. The next day, the couple went to a bank to have the will witnessed. Sheila's daughter worked at the bank and located witnesses and a notary. Sheila was acquainted with the witnesses but was not "personal friends" with them.

Brenda Hall, a close friend and coworker of Ray's, testified she visited Ray in the hospital in April 2002 and talked to him on the telephone "fairly often." She testified Ray was "upbeat about the procedure" and at no point did she believe Ray was confused. They discussed his health and work, and Hall said Ray was eager to get home so that he could continue his on-line trading on his Ameritrade account. After his release from the hospital, she visited him at home once and spoke with him at least a couple of times a week. During the May to June 2002 period, Hall testified that Ray never gave any indication of confusion and was "very strong" both emotionally and physically considering the ordeal he had been through. She testified that Ray "completely knew what was going on and what he was doing and that he was in complete control of all of his activities and actions."

Ray's sister, Delta Devine, testified by deposition. She said Ray and Sheila had a good relationship and were "devoted to one another." In the summer of 2001, before Ray had been diagnosed with cancer but was ill, she came to Texas for four weeks to help him clean and make repairs to a house that he had been awarded in the divorce. Two of his sons had been living rent-free in the house, and Ray had made them move out. Devine said the house was "trashed" and vandalized and ultimately cost $5000 to repair. She came back to Texas in September, after Ray had been diagnosed with cancer, and stayed until after he and Sheila married. Although Ray was weak physically, she said he was fine mentally.

Devine made a third trip to Texas when Ray underwent the stem cell transplant in April 2002. While in the hospital, she said there were times Ray was not lucid due to medication. She returned home to North Carolina before Ray was discharged and

said that Ray was "doing outstanding" and had a positive attitude. Once he was released from the hospital, she spoke with him three to four times a week and he never seemed confused about his business affairs or daily affairs. In mid-May, he told her he had made a second will. During the April to May period, Devine said Sheila took care of the "minutest detail" of Ray's recovery. She also testified that Ray's relationship with his three sons was strained during this time, in part because the sons were angry about the divorce. According to Devine, one son did not visit his father at all in the hospital, while a second visited once and the third visited only three or four times.

Finally, witnesses to the will testified by deposition. In affidavits executed at the time they witnessed Ray sign the will, the witnesses swore that Ray was of lawful age, sound mind and memory, and there was no evidence of undue influence. Although the witnesses underwent intensive cross-examination, neither recanted their original testimony by affidavit.

In their brief, appellants largely ignore the above evidence and argue Ray lacked testamentary capacity because of the effects of his illness. To support this position, they rely primarily on excerpts of what they claim are his medical records from the three-week hospital stay in late April to mid-May 2002 to show that the will executed fifteen days after his discharge is invalid. We have reviewed the medical records, and contrary to appellant's assertion, many of the excerpts relied upon were, in fact, contained in medical records from October 2001, several months before the will was executed. While Ray's hospital records during the critical period of April and May 2002 show isolated instances of medicated confusion, there is nothing else in the record to suggest this continued once he was discharged

from the hospital or at the time he executed his will. In fact, the evidence is to the contrary. Considering the evidence under the appropriate standards, we conclude it is both legally and factually sufficient to support a finding that Ray had testamentary capacity at the time he executed his will. We resolve the first issue against appellants.

In their second issue, appellants question whether appellee exercised undue influence over Ray at the time he executed his will. Again, we treat this issue as challenging the legal and factual sufficiency of the evidence.

The burden of proof was upon appellants to show Sheila exerted undue influence over Ray. When a party with the burden of proof challenges an adverse finding, he must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001). In reviewing a "matter of law" challenge, the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* The point of error should be sustained only if the contrary proposition is conclusively established. *Id.* In reviewing a factual-sufficiency challenge to a jury finding on an issue on which the appellant had the burden of proof, the appellant must show that "the adverse finding is against the great weight and preponderance of the evidence." *Id.* at 242.

While testamentary incapacity implies the want of intelligent mental power, undue influence implies the existence of a testamentary capacity subjected to and

controlled by a dominant influence or power. *Rothermel v. Duncan,* 369 S.W.2d 917, 922 (Tex.1963). To justify setting aside a will because of undue influence, a contestant must prove the (1) existence and exertion of an influence (2) that subverted or overpowered the testator's mind at the time he executed the instrument (3) so that the testator executed an instrument he would not otherwise have executed but for such influence. *See Cotten v. Cotten,* 169 S.W.3d 824, 827 (Tex.App.-Dallas 2005, pet. denied).

■■■■■ The exertion of undue influence cannot be inferred by opportunity alone. The evidence must show the influence was not only present, but in fact exerted with respect to the making of the testament itself. *Id.* Although weakness of mind and body, whether produced by infirmities of age or disease or otherwise, may be considered as establishing the testator's physical incapacity to resist or the susceptibility of his mind to an influence exerted, such evidence does not establish that his mind was in fact subverted or overpowered at the time the will was executed. *Rothermel,* 369 S.W.2d at 923; *see Cotten,* 169 S.W.3d at 827.

■■■ In nine sentences of analysis, appellants characterize appellee as a "vidua nigra," or "black widow," and rely on the timing of the diagnosis of cancer, marriage, and execution of the will to show that appellee "exploited Ray Allen's illness and his manic depressive disorder to foster utter dependence on her, which she directed" to the will.

Even assuming an influence was present, the timing of these events alone do not establish that appellee unduly influenced her husband. Hall, a close friend of Ray's who had no interest in this proceeding, was in frequent contact with Ray during the critical period from May to June 2002. She specifically testified that during this period, Ray was in "complete control of all of his activities and actions." Additionally, there was no evidence that appellee isolated Ray from others. To the contrary, he continued to communicate with his friends and family.

Evidence also showed that Ray's relationship with his sons was strained during his illness and at the time he made his will. In particular, Ray's sister testified that appellants were angry with their father over the divorce and rarely, if at all, visited him in the hospital when he underwent the stem cell transplant. Although appellants complain that Sheila received the bulk of Ray's estate, a person of sound mind has a perfect right to dispose of his property as he wishes and the fact finder could have determined Ray's disposition of his property was not unnatural. *See Rothermel,* 369 S.W.2d at 923.

We agree with appellee that appellants' assertions are nothing more than mere suspicion or surmise. Reviewing the evidence under the appropriate standards, we conclude the evidence is legally and factually sufficient to support the probate court's finding that Ray was not unduly influenced when he executed his will. The second issue is without merit.

■■■ In their third issue, appellants contend Ray was prohibited from making certain dispositions in his will because they conflicted with provisions of the divorce decree. Because Carol's claims are separate from her sons, we address the claims separately. We begin with Carol's claim.

Carol contends that under the divorce decree, Ray was required to deliver to her one-half the sums in his Ameritrade account number 12–242754 (not the same Ameritrade account that Ray established after he retired with Sheila as beneficiary) and Dallas Telco Federal Credit Union account as well as half the stock in Cap

Rock, but never did. She testified she hired a lawyer before Ray became ill to recover the assets, but the lawyer "didn't do anything with it" and she never pursued a legal claim until filing this suit.

Appellee argued in the probate court, as she does on appeal, that Carol's claims are barred by the two-year statute of limitations set out in the family code. The probate court agreed and made findings of fact and a conclusion of law to that effect. Nevertheless, in her brief, Carol simply asserts that breach of contract actions are governed by the four-year statute of limitations, cites to the Texas Civil Practice and Remedies Code and one case, but makes no effort to explain why the family code does not control. Under these circumstances, we question whether this issue is adequately briefed. *See* TEX.R.APP. P. 38.1(h). Regardless, after reviewing the applicable law, we agree Carol's claims are time-barred.

Section 9.003 of the family code provides that a suit to enforce the division of tangible personal property in existence at the time of the divorce decree must be filed before the second anniversary of the date the decree was signed or becomes final after appeal, whichever date is later, or the suit is barred. TEX. FAM.CODE ANN. § 9.003(a) (Vernon 1998).

Carol's claim is against clearly defined, tangible personal assets. The divorce decree was signed on September 7, 2000, but Carol did not bring her claim for almost three years, or December 29, 2003. Because Carol did not bring her claim within two years, the trial court did not err in concluding that her claim was time-barred.

As for Ray's sons, they claimed Ray failed to designate them as beneficiaries of his life insurance policy and moved his retirement funds into an account with Sheila as beneficiary, in violation of the divorce decree. Their only argument on appeal is that their claim was not barred by the statute of limitations because it did not accrue until Ray's death in December 2002

The trial court did not find that the sons' claims were barred by the statute of limitations; consequently, this argument does not appear to be relevant. Moreover, in its findings of fact and conclusions of law, the trial court determined that (1)Ray owed no duty to his sons which restricted or forbid him from naming Sheila beneficiary of his financial interests as he determined; (2) the sons were not parties to any contractual agreement between their parents to the extent one was created by the divorce decree; and (3) the sons were not third-party beneficiaries of any contract between their parents, which would create a legal duty owed to them by their father or which was enforceable against his estate.

 When a separate and independent ground that supports a judgment is not challenged on appeal, the appellate court must affirm the lower court's judgment. *See Nobility Homes of Tex., Inc. v. Shivers,* 557 S.W.2d 77, 83 (Tex.1977) (concluding appellant's failure to challenge separate and independent ground of recovery for negligence required affirmance of judgment); *Midway Nat'l Bank v. W. Tex. Wholesale Supply Co.,* 453 S.W.2d 460, 461 (Tex.1970) (per curiam) (affirming judgment when appellant failed to attack independent legal conclusion that "fully supported" judgment); *Britton v. Tex. Dep't of Criminal Justice,* 95 S.W.3d 676, 681 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (applying same principle to unchallenged grounds for plea to jurisdiction).

Here, the sons have not challenged any of the trial court's findings of fact and conclusions of law with respect to their breach of contract action. Accordingly, we

conclude they have not shown reversible error. We resolve the third issue against appellants.

We affirm the trial court's judgment.