



## MEMORANDUM OPINION

No. 04-11-00586-CV

In re: The **ESTATE of** Frank **O'NEIL**

From the County Court, Kimble County, Texas
Trial Court No. 2247
Honorable William T. McGee, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:     Catherine Stone, Chief Justice
            Sandee Bryan Marion, Justice
            Marialyn Barnard, Justice

Delivered and Filed:  August 31, 2012

REVERSED AND REMANDED

This is an appeal from the trial court's order granting appellee Gloria Fanous O'Neil's traditional and no-evidence motions for summary judgment in a will contest. After the final judgment was entered, the trial court denied appellant Michael O'Neil's motion for new trial.[1] Michael raises the following issues on appeal: (1) the trial court erroneously struck his summary judgment evidence and erroneously considered hearsay evidence attached to Gloria's motions; and (2) the trial court erroneously granted the no-evidence and traditional motions for summary judgment regarding Frank O'Neil Jr.'s testamentary capacity. We reverse the trial court's judgment and remand this matter to the trial court for proceedings consistent with this opinion.

---

[1] Because several parties share the same last names, for purposes of this opinion, many of the parties and witnesses are referred to by their first names.

**BACKGROUND**

Because the facts of this case are vital to our analysis of the issues raised, we provide a rather detailed factual background.

Frank O'Neil Jr., the deceased, was a retired sergeant with the Houston Police Department. After retiring, Frank moved to Junction, Texas in 2005. Frank met Gloria near the end of 2007. After being hospitalized in Abilene for respiratory issues in December 2008, during the first week of January 2009, Frank was diagnosed with mesothelioma, a rare form of lung cancer. Out of concern that his bills be paid while he was ill, Frank opened a joint checking account with Gloria. Within a very short period of time, Frank was told by his treating oncologist that his mesothelioma was in the end stages and that he should get his affairs together.

Ted Morgan, a police officer with the Junction Police Department and a friend of Frank's, averred that on January 22, 2009, Gloria told him she was handling Frank's affairs because Frank was incapable of handling them himself. While Frank was hospitalized, Morgan observed a rapid decline in Frank's physical and mental state. Specifically, Morgan's deposition testimony revealed that on February 4, 2009, while visiting Frank at the hospital, he concluded that Frank was not capable of making any decisions regarding his financial affairs. Morgan recalled that when he visited on February 4th and 5th, Frank was confined to his bed, in pain, and not in full control of his mental faculties.

Patricia McNenemy, Frank's sister, observed a similar decline in Frank. Her deposition testimony explained that on February 3, 2009, Frank called her and told her he did not know what was going on and asked Patricia and her husband, Guy McNenemy, to come to Abilene. Patricia and Guy immediately traveled to Abilene and visited with Frank at the hospital on February 4th, 5th, and 6th. Guy, also a retired police officer, testified he had known Frank for

over fifty years and, in his opinion, Frank was not capable of transacting any business during that time period. Similar to the exchange between Gloria and Morgan, Guy also testified during his deposition that Gloria told him in early January 2009 that she held a power of attorney over Frank's affairs.

On February 6, 2009, attorney Cathy Fowlkes met with Frank at the hospital, travelled to her office to draft the will, and returned that same day to execute the will. Gloria previously employed Fowlkes for her personal estate planning. Lisa Jones, a notary and friend of Gloria's for over twenty years, acted as notary. Additionally, the witnesses to the will signing, Kyra Shahan, Dominic Juliano, and Kelly Williamson, were all at the hospital and approached by Lisa to serve as witnesses. All five individuals' depositions provided that during the will signing, Frank was competent and understood the proceedings.

Simultaneous with the will signing, Fowlkes presented Frank with forms for his signature. The forms gave Gloria control over Frank's sizable assets, which were managed by Merrill Lynch. On February 19, 2009, Fowlkes returned to the hospital and gave Frank a form to sign over his annuity to Gloria.

On February 17, 2009, Gloria submitted a wedding license application, with an affidavit of absence, signed by Frank and notarized by Lisa Jones. On February 21, 2009, Gloria and Frank were married in the chapel at the Abilene Hospital. Frank died on February 27, 2009, at the age of sixty-six.

On March 6, 2009, Gloria filed an Application for Probate of Will. On March 11, 2009, Michael O'Neil, Frank's only child, filed his opposition to the Application for Probate of Will, Request to Annul Marriage, and Request for Appointment of Statutory Judge. On December 13,

2010, Gloria filed no-evidence and traditional motions for summary judgment regarding testamentary capacity. Michael's response was filed with the trial court on April 7, 2010.

After a hearing, the trial court granted Gloria's motions and on May 23, 2011, the trial court signed a final judgment. Michael's motion for new trial was overruled and this appeal ensued.

Gloria first argues this court should not consider Michael's response to Gloria's traditional motion for summary judgment because it was not timely filed and Michael did not obtain leave of court to file the late response. TEX. R. CIV. P. 166a(c). The trial court's order specifically states he considered Michael's response—"After due consideration of the Motions, the Responses, and all evidence attached to said Motions and Responses . . . ." "Texas courts have repeatedly confirmed that unless there is an affirmative indication in the record that the trial court permitted the late filing of the response, that response is a 'nullity.'" Timothy Patton, *Summary Judgments in Texas: Practice, Procedure, and Review* § 2.02[2] (3d ed. 2010); *see also INA of Texas v. Bryant*, 686 S.W.2d 614, 615 (Tex. 1985); *Pinckley v. Gallegos*, 740 S.W.2d 529, 532 (Tex. App.—San Antonio 1987, writ denied). The trial court's affirmative indication that he considered the late response may be proven by "a written ruling incorporated into the summary judgment reciting the response was considered." Patton, *Summary Judgments in Texas: Practice, Procedure, and Review* § 2.02[2]. By making such a recitation in the judgment, the trial court did not except Michael's response from his consideration. We therefore conclude "the language of the order as a whole shows that the trial court granted leave for" Michael to file his response to Gloria's motions for summary judgment. *See DMC Valley Ranch, L.L.C. v. HPSC, Inc.*, 315 S.W.3d 898, 903 (Tex. App.—Dallas 2010, no pet.) (holding that court's order including "[a]fter considering all of the pleadings, the motions, the responses, the replies, the

evidence on file" showed the court granted the requested leave). Accordingly, we will consider Michael's response in our review.

### FINALITY OF THE JUDGMENT

Although Michael asserts the trial court's judgment was not final due to a pending contest of Frank's and Gloria's marriage, we disagree. Texas courts have long held that an order or judgment in probate may be final and appealable even in the absence of full and final disposition of the entire probate proceeding. *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). The general rule is that an appeal may be taken only from final judgments. *Id.* Probate proceedings, however, are often an exception to the "one final judgment." *De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006). "In other words, an order is appealable if it finally adjudicates some *substantial right*. Whereas, on the other hand, if it merely leads to further hearings on the same issue, it is interlocutory." *Estate of Wright*, 676 S.W.2d 161, 163 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.) (emphasis original). Here, the question of testamentary capacity conclusively disposed of the one phase of the proceedings and thus finally adjudicated a substantial right. *Id.* Accordingly, we hold the trial court's rulings on the motions for summary judgment are final and appealable. *See De Ayala*, 193 S.W.3d at 578; *Crowson v. Wakeham*, 897 S.W.2d 779, 781-83 (Tex. 1995).

### SHAM AFFIDAVITS

In Gloria's reply to Michael's response to her motions for summary judgment, Gloria alleged the affidavits of Patricia and Guy McNenemy and Ted Morgan contradicted their deposition testimony and therefore constituted sham affidavits. *See* TEX. R. CIV. P. 166a(h) (allowing for opposing party to collect reasonable attorneys' fees if "any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay . . . .").

The trial court sustained the objection and struck the affidavits. Michael contends the trial court erred in sustaining the objection and striking the affidavits. We agree.

### *Standard of Review*

We review a trial court's ruling that sustains or overrules an objection to summary judgment evidence for an abuse of discretion. *Doncaster v. Hernaiz*, 161 S.W.3d 594, 601 (Tex. App.—San Antonio 2005, no pet.) (citing *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998)). A trial court abuses its discretion if its ruling is arbitrary and unreasonable or without reference to any guiding rules or principles. *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004). To obtain a reversal on the trial court's exclusion of evidence, the appellant must establish the error was harmful and was calculated to cause and probably did cause the rendition of an improper judgment. *Doncaster*, 161 S.W.3d at 601; TEX. R. APP. P. 44.1(a). Generally, absent a showing the whole case turns on the complained of evidence, the error is not reversible. *Doncaster*, 161 S.W.3d at 601 (citing *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001); *Atl. Mut. Ins. Co. v. Middleman*, 661 S.W.2d 182, 185 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.)).

### *Analysis*

An allegation that an affidavit is a sham generally arises when a party presents an affidavit made in bad faith or for purposes of delay. TEX. R. CIV. PROC. 166a(h). Generally, sham affidavits are used to avoid summary judgment. The affidavit constitutes a sham when the affidavit directly contradicts the affiant's deposition testimony. *Cantu v. Peacher*, 53 S.W.3d 5, 10 (Tex. App.—San Antonio 2001, pet. denied). A trial court may not consider statements included within a sham affidavit. *Cantu*, 53 S.W.3d at 10-11.

It is well established that deposition testimony does not control over conflicting testimony presented by affidavit. *Randall v. Dallas Power & Light Co.*, 752 S.W.2d 4, 5 (Tex. 1988). In *Cantu*, this court explained that the differences in witness affidavits and depositions, in sham affidavit complaints, are generally "more a matter of degree and details than direct contradiction." An appellate evaluation requires an analysis of these differences. *Cantu*, 53 S.W.3d at 10.

> [W]e conclude that a court must examine the nature and extent of the differences in the facts asserted in the deposition and the affidavit. If the differences fall into the category of variations on a theme, consistent in the major allegations but with some variances of detail, this is grounds for impeachment, and not a vitiation of the later filed document. If, on the other hand, the subsequent affidavit clearly contradicts the witness's earlier testimony involving the suit's material points, without explanation, the affidavit must be disregarded and will not defeat the motion for summary judgment.

*Id.* at 10-11.

In *Cantu*, the doctor never wavered in his conclusion that the delay in operating caused the plaintiff harm. *Id.* at 11. Here, Gloria alleged the affidavits were in direct conflict with the deposition testimony. We disagree. Neither Patricia, Guy, nor Morgan's statements, contained within their respective affidavits, changed their opinion that Frank was not competent to conduct business or in full control of his mental faculties around the time of the will ceremony. Although all three witnesses testified in both their depositions and their affidavits that they were not present during the will signing on February 6th, the witnesses' testimony remained unchanged that Frank was incapable of making financial decisions or conducting business around this time period.

In her argument to the trial court, Gloria focused primarily on the fact that the three witnesses, Patricia, Guy, and Morgan, were not present at the signing of the will. Additionally, Gloria argued Frank was able to talk to Morgan and Guy about his vehicles and chores to be

completed at his house, and that Frank recognized his family and friends.  Even if true, these facts do not change the overall tenor of the deposition testimony that Frank was not fully in control of his mental faculties.  Because circumstantial evidence around the time of the signing of the will is relevant, especially the same week the will was signed, we look to their testimony as relevant of Frank's condition at the time of the will's making.  *See Croucher*, 660 S.W.2d at 57.  We conclude the affidavits filed in response to the summary judgment motions are not sham affidavits; and, therefore, the trial court erred in excluding this summary judgment evidence.  We sustain Michael's issue and hold the trial court erred in striking the affidavits of Guy McNenemy, Patricia McNenemy, and Ted Morgan.

### MOTIONS FOR SUMMARY JUDGMENT AS TO TESTAMENTARY CAPACITY

Michael next argues Gloria did not prove she was entitled to summary judgment as a matter of law and he did produce summary judgment evidence raising an issue of fact.  Therefore, Michael argues the trial court erred in granting Gloria's motions for summary judgment.  Because we held the affidavits attached to Michael's summary judgment response were proper summary judgment evidence, our review of the trial court's grant of summary judgment must include this evidence.

### *Standard of Review*

We review a trial court's grant or denial of summary judgment de novo.  *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).  To prevail on a traditional motion for summary judgment, the moving party must prove that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion."  TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex. 1985).  An appellate court must: (1) place the burden of showing that

there is no genuine issue of material fact on the movant; (2) take all evidence favorable to the non-movant as true; and (3) indulge every reasonable inference in favor of the non-movant. *Nixon*, 690 S.W.2d at 548-49; *Caldwell v. Curioni*, 125 S.W.3d 784, 789 (Tex. App.—Dallas 2004, pet. denied) (citing *M.D. Anderson Hosp. v. Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23-24 (Tex. 2000)). "The trial court's duty is to determine if any genuine issues of material fact remain, not to weigh the evidence or determine credibility." *Cummins v. Travis County Water Control & Improvement Dist. No. 17*, 175 S.W.3d 34, 53 (Tex. App.—Austin 2005, pet. denied).

A no-evidence summary judgment is essentially a directed verdict granted before trial, to which we apply a legal-sufficiency standard of review. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003); *Perdue v. Patten Corp.*, 142 S.W.3d 596, 603 (Tex. App.—Austin 2004, no pet.). A no-evidence summary judgment will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch*, 118 S.W.3d at 751; TEX. R. CIV. P. 166a(i). The non-movant, however, is not required to marshal its proof; he need only present some evidence of probative value raising a fact issue about which reasonable minds could differ. TEX. R. CIV. P. 166a(i) cmt. (1997); *Johnson v. Brewer & Pritchard, PC*, 73 S.W.3d 193, 207 (Tex. 2002). We view the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Id.* (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). More than a scintilla of supporting evidence exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Id.* "Less than a scintilla of

evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

*Analysis*

Generally, an affidavit attached to a will that is in substantial compliance with the affidavit form set forth in section 59(a) of the Texas Probate Code will make the will self-proved. *See* TEX. PROB. CODE ANN. § 59(b) (West 2011). Once the will has been admitted to probate, the burden shifts to any will contestant to establish the testator lacked testamentary capacity. *In re Estate of Graham*, 69 S.W.3d 598, 605 (Tex. App.—Corpus Christi 2001, no pet.) (citing TEX. PROB. CODE ANN. § 88(b) (Vernon 1980)). However, if a contest is filed ***prior*** to the will being admitted to probate, the burden of proving capacity remains with the movant. *Croucher v. Croucher*, 660 S.W.2d 55, 57 (Tex. 1983) (emphasis added).

A testator must be of "sound mind," which means having testamentary capacity at the time the testator executes the will. TEX. PROB. CODE ANN. § 57 (West 2011). The testamentary capacity requirement is satisfied upon proof the testator had "sufficient mental ability to understand he is making a will, the effect of making a will, and the general nature and extent of his property." *Long v. Long*, 196 S.W.3d 460, 464 (Tex. App.—Dallas 2006, no pet.). The testator must also be familiar with both his "next of kin and the natural objects of his bounty, the claims upon them, and have sufficient memory to collect in his mind the elements of the business transacted and hold them long enough to form a reasonable judgment about them." *Id.*

The question of testamentary capacity, however, must be determined in light of the day and time the will was executed. *Id.* at 464-65; *In re Estate of Graham*, 69 S.W.3d 598, 606 (Tex. App.—Corpus Christi 2001, no pet.) (citing *Lee v. Lee*, 424 S.W.2d 609, 611 (Tex. 1968)). In the present case, there is no direct testimony of acts, demeanor, or condition indicating that Frank

lacked testamentary capacity when the will was signed. However, it has long been held that evidence showing the testator's incapacity at times other than the execution of the will, can be used to show incapacity on the day in question if it "demonstrates that the condition persists and 'has some probability of being the same condition which obtained at the time of the will's making.'" *Croucher*, 660 S.W.2d at 57 (quoting *Lee v. Lee*, 424 S.W.2d 609, 611 (Tex. 1968)); *see also Long*, 196 S.W.3d at 465; *In re Estate of Lynch*, 350 S.W.3d 130, 136 (Tex. App.—San Antonio 2011, pet. denied). The *Croucher* court established a two-prong test for a party alleging lack of testamentary capacity: (1) does the evidence show a lack of testamentary capacity; and (2) if so, was the evidence probative of the testator's capacity, or lack thereof, at the time the will was executed. *Croucher*, 660 S.W.2d at 57; *Lynch*, 350 S.W.3d 130, 136-37.

More specifically, the testator's mental condition may be inferred from lay and expert witnesses' observation of the testator's conduct prior to or subsequent to the will's execution. *Lee*, 424 S.W.2d at 611; *Storey v. Hayes*, 448 S.W.2d 179, 181-82 (Tex. Civ. App.—San Antonio 1969, writ dism'd). To mount a successful challenge to the testamentary capacity of a testator, based on circumstantial evidence at times other than the execution of the will, the movant must establish: "(1) that the evidence offered indicates a lack of testamentary capacity; (2) that the evidence is probative of the testator's capacity (or lack thereof) on the day the will was executed; and (3) that the evidence provided is of a satisfactory and convincing character, because probate will not be set aside on the basis of evidence that creates only a suspicion of mental incapacity." *In re Estate of Graham*, 69 S.W.3d 598, 606 (Tex. App.—Corpus Christi 2001, no pet.) (holding evidence that creates only suspicion of mental incapacity insufficient to set aside trial court determination of competency). Importantly, the number of witnesses

supporting or contesting the question of testamentary capacity is irrelevant. The only question is whether the testimony raised a question of fact. *Id*.

Attached to her motions, Gloria presented testimony from several witnesses. We consider the partial deposition testimony of Catherine Fowlkes, Lisa Jones, Kyra Shahan, Dominic Juliano, and Kelly Williamson as statements which are not hearsay under Texas Rules of Evidence 801(e)(3) provision for a deposition taken in the same civil proceeding. *See* TEX. R. EVID. 801(e)(3). We do not, however, consider the medical records attached to Gloria's motions for summary judgment because although they are properly a hearsay exception, they are not proven up with a medical record's affidavit in accordance with Rule 803(6). *See* TEX. R. EVID. 803(6).

Catherine Fowlkes testified she was aware of Frank's medical condition and understood he requested that she prepare specific documents, including a new will, designation of Gloria as sole beneficiary under his Merrill Lynch accounts, and a Pay On Death designation whereby Frank's Junction bank account, including the $5,000.00 monthly deposit from Merrill Lynch, would transfer as a non-probate asset to Gloria. Fowlkes further testified she came to the hospital on February 6, 2009 at Frank's request. This was the first time Fowlkes spoke to Frank. According to her testimony, she met with Frank, made notes as to how the documents were to be prepared, left the hospital, and returned later that same day to formally execute the will.

Lisa Jones, a notary and friend of Gloria's for over twenty years, agreed to act as a notary on the documents in question. She testified Frank appeared to have his full mental faculties and she did not see any signs of diminished mental capacity. Kyra Shahan, who was at the nurses' station when Jones requested she act as a witness testified, "[Frank] knew what he wanted. I sat there and I watched him. He was very alert, he was very oriented, he was able to hold a

conversation without a problem." Similarly, Shahan's fiancé, Dominic Juliano, also acted as a witness at the will ceremony. Juliano described Frank as knowing "exactly what he owned, exactly what he had and what he was leaving to Gloria." Finally, Kelly Williamson, an employee of the hospital where Frank was receiving treatment, testified that Frank made eye contact with her, he was not slumped over on the bed, and he was "definitely alert and knew what he was doing."

Based on the evidence attached to her motions for summary judgment, we hold Gloria met her initial burden of proving testamentary capacity in her motions for summary judgment. Thus, the burden shifted to Michael to present evidence raising a fact issue as to Frank's testamentary capacity. Michael presented summary judgment evidence consisting of affidavits from Patricia and Guy McNenemy and Ted Morgan. These affiants all testified to their long history with Frank, his deteriorating health, and opined that he was not capable of conducting business or in complete control of his mental faculties the first week of February, 2009.

In addition to the affidavits, Michael relied on the testimony attached to Gloria's motions. He argued Fowlkes' billing records revealed an overwhelming number of communications regarding Frank's will were with Gloria, not Frank. The testimony also raised questions as to Frank's ability to read the will on February 6th because Fowlkes read the will out loud as Frank followed along with his finger and Frank did not notice or raise any concerns that the pronouns contained within the will were all feminine. Additionally, the testimony revealed that under the will, Frank bequeathed five percent of his estate to the Houston Police Officers' Retirement Union—when no such organization existed.

Michael's evidence shows Frank's condition was declining and Frank was becoming weaker throughout his hospital stay. Three witnesses, all whom had known Frank for an

extended period of time, testified that the three days preceding the signing of the will, Frank was in and out of sleep, very confused, and not in a state of mind to conduct financial affairs. Therefore, we hold Michael produced some evidence that Frank lacked testamentary capacity. We hold there is sufficient summary judgment evidence to show the existence of a material fact issue with respect to Frank's testamentary capacity at the time of the will's making. Accordingly, we conclude the trial court erred in granting Gloria's no-evidence and traditional motions for summary judgments.

## CONCLUSION

Based on the foregoing, we hold the trial court erred in striking Michael's summary judgment affidavits and in granting the summary judgments in favor of Gloria. Accordingly, we reverse the trial court's judgment and remand this matter for further proceedings in accordance with this court's opinion.

Marialyn Barnard, Justice