# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00363-CV

**Leslie Durio Pool, Appellant**

**v.**

**Danae Durio Diana, Appellee**

### FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY
### NO. 85,839, HONORABLE GUY S. HERMAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Leslie Durio Pool appeals the probate court's judgment that she take nothing on her will-contest claims and that she and her attorneys pay sanctions totaling $109,500. We will affirm the probate court's judgment. Also, for reasons described herein, we are granting a motion for penalties against Ms. Pool and her counsel.

On June 16, 1994, Donn Durio executed a will leaving everything to his third wife of twenty-two years, Marianne, and nothing to his children, Leslie and Danae.[1] On November 21, 2006, after Donn's death in September 2006, Danae, Leslie's sister, applied to probate Donn's will. On December 11, 2006, Leslie filed a will contest, which she styled "Objections and Opposition to Probate of Will and Issuance of Letters Testamentary [and] Request for Order to Produce a Will."

---

[1] As several individuals with common surnames are involved in the events leading to this lawsuit, we will refer to them by their first names for clarity.

Leslie's will contest included allegations that Donn lacked testamentary capacity, that a 15-acre Hamilton Pool Road property conveyed in the will had been orally promised to her, that the will was the product of forgery or that its drafter failed to comply with formalities, and that the will was the product of undue influence. She also brought claims against Danae for defamation and disparagement. Leslie amended her will contest twice during the course of the litigation, on March 6, 2007, and on September 7, 2007.

On September 14, 2007, the probate court granted summary judgment in favor of Danae, rejecting Leslie's claims that Donn lacked testamentary capacity and that Leslie was entitled to an interest in the 15-acre Hamilton Pool Road property. Also on September 14, 2007, Leslie nonsuited her undue influence claim, and the probate court dismissed that claim with prejudice.

On March 4, 2008, Leslie nonsuited her claims against Danae alleging defamation and disparagement, and the probate court signed an order dismissing those claims on March 6, 2008. Also on March 6, 2008, the probate court granted summary judgment on Leslie's claims that the will was a forgery or that its drafter failed to comply with formalities. This order of summary judgment, signed on March 20, 2008, disposed of the last of Leslie's claims. On March 25, 2008, following an evidentiary hearing, the probate court admitted Donn's will to probate.

On March 19, 2008, Danae and Marianne filed a motion for sanctions against Leslie, Joe Pool, and Peter Ferraro. Joe Pool is Leslie's husband and was her attorney of record from December 11, 2006, the day Leslie brought her will contest, until the probate court signed Joe's motion to withdraw on August 13, 2007. Peter Ferraro is an attorney who made his appearance on April 12, 2007, and remains Leslie's attorney of record on appeal.

The probate court ultimately imposed sanctions totaling $109,500.[2]  Of the total award, $101,000 in sanctions was awarded following a four-day evidentiary hearing during which one of the attorneys representing Marianne and Danae testified that his clients had incurred over $350,000 in attorney's fees and costs in responding to Leslie's "pleadings, claims and actions that [were] alleged to be groundless and in bad faith or harassing or otherwise sanctionable."  The attorney testified that he did not include attorney's fees or costs incurred in admitting the will to probate.  Billing statements from the attorney's law firm to support the alleged amount of incurred attorney's fees of $350,000 were also admitted.  After the hearing, the probate court modified its final judgment admitting the will to probate to include the award of sanctions with detailed findings concerning the sanctions.

In her first four issues, Leslie argues that the probate court erred in granting Danae's three motions for summary judgment because Leslie had presented more than a scintilla of evidence to support these claims.  Danae's three motions included both traditional and no-evidence grounds, and we may affirm on either ground.  *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003) (where order does not specify the grounds for summary judgment, appellate court must affirm the summary judgment if any of the theories presented to the district court are meritorious).

We review the district court's summary judgment de novo.  *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Knott*, 128 S.W.3d at 215.  A party moving for

---

[2]  Leslie appeals the following sanction awards:  $69,000 against Leslie and Joe jointly and severally; $6,000 against Leslie individually; $30,000 against Joe individually; $1,000 against Peter Ferraro individually; and $3,500 against all three jointly and severally.

3

summary judgment must demonstrate that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). Where, as here, a defendant moves for summary judgment under the "traditional" standard, he must meet the initial burden of either conclusively negating at least one essential element of each of the plaintiff's causes of action or conclusively establishing each element of an affirmative defense. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). If the defendant meets this initial burden, he is entitled to summary judgment unless the non-movant plaintiff presents summary-judgment evidence raising a genuine issue of material fact as to one of the elements at issue. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). When reviewing a summary judgment, we take as true all evidence favorable to the non-movant, and indulge every reasonable inference and resolve all doubts in her favor. *Id.*; *Nixon*, 690 S.W.2d at 549.

A no-evidence motion for summary judgment must be granted if, after an adequate time for discovery, (1) the moving party asserts that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial, and (2) the non-movant fails to produce more than a scintilla of summary-judgment evidence raising a genuine issue of material fact on those elements. Tex. R. Civ. P. 166a(i). A no-evidence summary judgment is essentially a directed verdict granted before trial, to which we apply a legal-sufficiency standard of review. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003); *Perdue v. Patten Corp.*, 142 S.W.3d 596, 603 (Tex. App.—Austin 2004, no pet.). A no-evidence summary judgment will be sustained when: (1) there is a complete absence of evidence

4

of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch*, 118 S.W.3d at 751. We view the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Id.* (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). More than a scintilla of supporting evidence exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Id.* "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

As an initial matter, Leslie argues that the exclusion of certain summary-judgment evidence was improper. Rulings on the admission or exclusion of evidence are committed to the trial court's sound discretion. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). A trial court abuses its discretion if it rules without regard for any guiding rules or principles. *Id.* We uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). Moreover, we will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1; *see also Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989). Thus, for the exclusion of evidence to constitute reversible error, the complaining party must show: (1) that the trial court committed error; and (2) that the

5

error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex. 1992).

Trial courts may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* Tex. R. Evid. 403; *State v. Malone Serv. Co.*, 829 S.W.2d 763, 767 (Tex. 1992). Here, on relevance grounds, the probate court excluded affidavits of C. Richard Chilleri and Michael Evans. Although Leslie contends that the affidavits were improperly excluded, she cites to no legal authority to support her argument and no explanation as to any contents of the affidavits that were admissible or why. Leslie fails to explain or even address how she was harmed by the exclusion of the affidavits or how their exclusion probably caused the rendition of an improper judgment. Indeed, Leslie presents no argument on this point beyond her bare assertions that because the excluded evidence "deal[s] with the issues related to an error in the number of pages of the will admitted to probate," the excluded testimony "would certainly be directly relevant to the 'forgery' claim" and would also "bear some relevance to the capacity of the person making the will."

In addition to the Chilleri and Evans affidavits, the probate court excluded evidence attached to Leslie's response to the motion for summary judgment on the Hamilton Pool property claim. Leslie's challenge to the exclusion of this evidence states only that she "was not asserting a contract claim but an equitable claim and hence her evidence in support of that claim should not have been excluded." She, likewise, asserts that the parol evidence rule does not apply because she was not asserting a contract claim. As to both assertions, however, Leslie neither offers further explanation nor cites to any legal authority.

6

Leslie similarly challenges the probate court's exclusion of certain summary-judgment evidence on hearsay grounds but, as argument, copies the text of the hearsay rule and states merely that "[t]he Court was in error" because "[e]ach of these statements meets an exception to the Hearsay rule." Leslie's challenges to the exclusion of summary judgment evidence attached to the summary judgment on her forgery and formalities claim and to the exclusion of evidence under the "Dead Man's Rule" are equally lacking in substance.

As to each of these evidentiary challenges, Leslie has presented neither argument nor authority to support her contention that the evidence was improperly excluded. Leslie has waived her evidentiary challenges on appeal. *See* Tex. R. App. P. 38.1. Even if Leslie had adequately briefed these points, a review of the record shows no abuse of discretion in the evidentiary rulings. *See* Tex. R. Evid. 402, 601, 802; Tex. R. App. P. 44.1; *Malone*, 972 S.W.2d at 43. Accordingly, we overrule Leslie's first issue.

As another threshold matter, Leslie argues that the probate court should have granted a continuance to allow additional time for discovery before hearing Danae's three summary-judgment motions. We review the trial court's denial of a motion for continuance under a clear-abuse-of-discretion standard. *Two Thirty Nine Joint Venture*, 145 S.W.3d at 161. A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002).

The trial court may order a continuance of a summary-judgment hearing if it appears "from the affidavits of a party opposing the motion that he cannot for reasons stated present

7

by affidavit facts essential to justify his opposition." Tex. R. Civ. P. 166a(g). We consider the following nonexclusive factors when deciding whether a trial court abused its discretion in denying a motion for continuance seeking additional time to conduct discovery: the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *Id.*; *Perrotta v. Farmers Ins. Exch.*, 47 S.W.3d 569, 576 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

Leslie filed her original will contest on December 11, 2006. On August 6, 2007, Danae filed her first two motions for summary judgment as to testamentary capacity and failure to devise acreage, asserting both traditional and no-evidence grounds. Included with the motions served on Leslie was a notice setting the motions for hearing on August 28, 2007. On August 20, Leslie filed her motion for continuance, seeking additional time to conduct discovery. The probate court granted Leslie's motion and reset the hearing for September 14, 2007. Although Leslie now contends that the length of the continuance was insufficient to allow time for additional discovery, the record does not show that any other motion for continuance was filed. Given that the continuance was granted and that no other motion for continuance was filed, there is no order or ruling below from which Leslie can appeal. *See* Tex. R. App. P. 33.1.

Nevertheless, Leslie argues that:

> Although a short continuance was granted due to Appellant's new counsel's trial schedule, no continuance was granted to allow additional discovery concerning Mr. Durio's medical condition. Under the circumstances failure to allow time for such additional discovery was an abuse of discretion.

8

Even if this were so, and even if Leslie had filed a second motion for continuance to preserve error, the probate court would have acted within its discretion in denying it. The probate code allows a party to a will contest based on testamentary capacity to subpoena medical records directly from medical providers. Tex. Prob. Code Ann. § 10b (West 2003). Leslie filed her original will contest on December 11, 2006, Danae filed her motions for summary judgment on August 6, 2007, and the summary judgments were heard on September 14, 2007. The record shows that Danae complied with discovery requests for documents in her possession. Further, at any time during the intervening ten months, Leslie could have obtained Donn's medical records by issuing subpoenas directly to medical providers, as provided under the probate code. *See id.* Thus, even if Leslie had preserved error on this issue, the probate court would have acted within its discretion in denying Leslie's motion for continuance. *See Two Thirty Nine Joint Venture*, 145 S.W.3d at 161.

Leslie next moves to the merits of the summary-judgment motions, arguing first that the probate court erred in granting summary judgment as to testamentary capacity because there was insufficient evidence to establish Donn's testamentary capacity. Danae, as the will proponent, had the burden of proving Donn's testamentary capacity. *See Croucher v. Croucher*, 660 S.W.2d 55, 57 (Tex. 1983); *Long v. Long*, 196 S.W.3d 460, 464 (Tex. App.—Dallas 2006, no pet.). Testamentary capacity requires that the testator, at the time of execution of the will, have sufficient mental ability to understand he is making a will, the effect of making the will, and the general nature and extent of his property, know his next of kin and the natural objects of his bounty, and have sufficient memory to collect in his mind the elements of the business transacted and hold them long enough to perceive their obvious relation to each other and form a reasonable judgment about them.

9

*See Long*, 196 S.W.3d at 464; *In re Estate of Grimm*, 180 S.W.3d 602, 605 (Tex. App.—Eastland 2005, no pet.).

Danae proved testamentary capacity through affidavits, deposition testimony, and other documentary evidence. For example, Marianne, Donn's wife, testified that on June 16, 1994, the day that Donn executed his will, he "understood the business in which he was engaged (executing his will), the effect of making his will (that he was stating that his property would pass upon his death as set forth in the will), [and] the general nature and extent of his property (for example, the house in Westlake, the 15 acre tract)." The testimony of the witnesses to the will's execution, as well as the affidavit testimony of Donn's friends, neighbors, and former attorney, corroborate Marianne's testimony.

Once Danae, the summary-judgment movant, established her right to summary judgment, the burden shifted to Leslie, the nonmovant, to present evidence raising a fact issue. *See Willrich*, 28 S.W.3d at 23; *United Bus. Mach. v. Entertainment Mktg. Inc.*, 792 S.W.2d 262, 264 (Tex. App.—Houston [1st Dist.] 1990, no writ). In her response to Danae's motion, Leslie presented the affidavits of C. Richard Chilleri and Michael Evans. As explained above, however, the probate court excluded these affidavits on relevance grounds, and, on appeal, Leslie waived any complaint to their exclusion because of inadequate briefing. *See* Tex. R. App. P. 38.1.

Even if the affidavits had not been excluded, however, they provide no evidence of testamentary capacity. The affidavits address the page numbering in the will, not testamentary capacity. They provide little information beyond what could be gathered from an examination of the will itself. Both affiants state, for example:

10

I would not have signed as a witness on the original of the documents that are attached hereto as copies if I believed that I would be misstating the number of pages in the will.

The manner by which the will's pages were numbered and whether or not there were missing pages has no bearing on whether, at the time he executed the will, the undisputed summary-judgment evidence reflected that Donn understood what he was doing, understood the effect of what he was doing, knew the extent of his property, and knew his next of kin. *See Long*, 196 S.W.3d at 464; *In re Estate of Grimm*, 180 S.W.3d at 605. Because the affidavits, even if admitted, are no evidence of testamentary capacity, and because Leslie attached no other evidence to her summary-judgment response, she failed to raise a fact issue as to testamentary capacity.

On appeal, however, Leslie asserts that the summary-judgment record contains the following evidence in support of her argument that Donn lacked testamentary capacity:

1.  Donn Durio had a drinking problem and drank regularly. His behavior when he drank was irrational.

2.  The pages of his will were miss-numbered [sic] and there was some sort of cross out relating to the numbering of the pages which was also incorrect.

3.  The Residuary Clause states conflicting contingent beneficiaries.

4.  The will does not mention nor devise anything to Donn Durio's grandchildren, whom he loved.

5.  The will miss-identifies [sic] his step-children.

6.  The will does not bequeath anything to his daughters whom he loved.

7.  The will does not devise or bequeath anything to Leslie Pool, the daughter with whom he shared the extremely traumatic loss [of her mother] and to whom he was especially close.

11

8.    The will does not devise Helen Durio's personal possessions or sentimental property to either or her daughters but instead to Marianne Durio.

9.    Yet the will devises a Rolex watch to Stephen Iler.

10.   Decedent had a large estate, yet made no provisions for reduction of estate taxes.

Leslie points to no summary-judgment evidence to support her assertion that Donn had a drinking problem. As to her other points, for which she can rely on the will itself, none show that Donn lacked testamentary capacity. Donn defined his children by including his two biological children from his previous marriage to Helen and his four step children by marriage to Marianne. As testator, he can define his family and dispose of his property in any manner he chooses. *See* Tex. Prob. Code Ann. §§ 57, 58 (West 2003); *In re Estate of Clark*, 219 S.W.3d 509, 514 (Tex. App.—Tyler 2007, no pet.); *In re Estate of Morris*, 577 S.W.2d 748, 755 (Tex. Civ. App.—Amarillo 1979, writ ref'd n.r.e.) ("Neither courts, juries, relatives nor friends of a testator may say how property should be passed by a will or rewrite a will because they do not like the distribution of the property."). While recognizing his children, Donn devised all of his property to his third wife of twenty two-years, Marianne. Devising all of one's property to one's spouse is commonplace and no indication of a lack of testamentary capacity, as Leslie contends. The absence of tax planning, the lack of any specific bequests, errors in page numbering, and a defective residual clause have no bearing on testamentary capacity. *See Long*, 196 S.W.3d at 464; *In re Estate of Grimm*, 180 S.W.3d at 605. Because Leslie failed to raise a fact issue as to testamentary capacity, we hold that the probate court did not err in granting summary judgment on this issue.

12

Leslie also argues that the probate court abused its discretion by granting summary judgment on Danae's claim to the 15-acre Hamilton Pool Road property. Leslie argues that the 15 acres were part of a constructive and/or resulting trust that was being held by Donn for the benefit of Leslie. According to Leslie, this "equitable claim was based on a number of factors including the close relationship and the fiduciary or confidential relationship that existed between Leslie and her father especially after the traumatic circumstances of her mother's death."

Leslie argues that summary judgment was based on the understanding that Leslie was asserting a contract claim and, because she was not asserting a contract claim, the court's ruling either did not dispose of her constructive trust claim or should not have disposed of her constructive trust claim. Although Leslie attempts to avoid summary judgment by specifically describing her claim as one for constructive/resulting trust, her argument is—in substance—that there was an oral agreement to devise the property. However she may describe the claim, Leslie's pleadings show that her claim is simply this: Donn made an oral promise to devise the 15-acres to her and to Danae. As a matter of law, an oral agreement to devise property otherwise disposed of in a will is unenforceable. Tex. Prob. Code Ann. § 59a (West Supp. 2009); *Taylor v. Johnson*, 677 S.W.2d 680, 681-82 (Tex. App.—Eastland 1984, writ ref'd n.r.e.). The probate court properly granted summary judgment on this issue.

Leslie next challenges Danae's third motion for summary judgment on the issue of forgery and formalities, filed on January 25, 2008. Danae's challenge to the propriety of the probate court's grant of summary judgment as to forgery and formalities begins with a challenge to the probate court's denial of her motion for continuance.

13

As noted, Leslie filed her will contest on December 11, 2006. Danae filed her motion for summary judgment as to Leslie's forgery and formalities claim on January 25, 2008, over a year later. The hearing was set on March 6, 2008, and Leslie filed her motion for continuance on March 4, 2008. Although the probate court denied Leslie's motion, it granted leave for—and considered—her late-filed response and attached evidence. Leslie had forty-one days between the time the summary judgment motion was filed and the hearing, twenty days more than the twenty-one days required by rule. *See* Tex. R. Civ. P. 166a(c). In addition, the probate court granted Leslie's motion for leave to file a late response and overruled Danae's timeliness objections to Leslie's attached evidence. In these circumstances, we find no abuse of discretion in the denial of the motion for continuance. *See Two Thirty Nine Joint Venture*, 145 S.W.3d at 161.

As to the merits of the motion, we, likewise, find no error. Because the will was self-proved under the probate code, Leslie bore the burden of proof on the issue of forgery. *See* Tex. Prob. Code Ann. § 84(a); *Tomlinson v. Estate of Theis*, No. 03-07-00123-CV, 2008 Tex. App. LEXIS 372, at *19 (Tex. App.—Austin Jan. 18, 2008, no pet.) (memo op.). Thus, to defeat Danae's no-evidence motion, Leslie would have had to produce summary-judgment evidence raising a genuine issue of material fact in support of her claim that Donn's will had been forged or not properly executed. *See id.*; Tex. R. Civ. P. 166a(i).

As evidence sufficient to raise a fact issue that the will is either a forgery or not executed with the required formalities, Leslie points us to the "face of the will." Specifically, Leslie points out the following:

14

1. The number of pages is identified as 5 above the signature, there are not that many pages;

2. The number of pages are crossed out and re-entered, the number crossed out appears to be a 3, there are not that many pages above the signature line;

3. Page one evidences conflicting residual beneficiaries;

4. The children were improperly identified;

5. The signatures by the witnesses to the will attest to an incorrect number of pages;

6. There is a faint print of additional words on the will page one that overlap the provision of the will but are not located on any other page of the will indicating that the "original" of page one was copied and may have been a substitute;

7. The purported will has no specific property disposition except for a Rolex watch nor does it list any property he previously conveyed;

8. The purported will has a different first page than the will of Marianne Durio which was alleged to have been executed in the same manner and at the same time as the purported will;

9. The purported will has no provision for taxes;

10. The will effectively devises in excess of two to three million dollars without naming anything but a Rolex watch.

11. Appellee made no attempt to explain or document approval and acknowledgment of the changes or alterations.

12. There is neither Testator signature nor his initials on Purported Will Page 1.

13. The Purported Will does not match or dovetail in with the rest of the Purported Will in content and headings numbering.

We agree with the probate court that the evidence presented by Leslie is insufficient to raise a fact issue on her forgery and formalities claim. As evidence that the will was forged or not properly

15

executed, Leslie offers nothing more than some typographical errors and her own belief that the manner in which Donn chose to dispose of his property was unreasonable. Leslie's evidence is little more than a list of her own suspicions that lead her to conclude that the will might be a forgery. Such evidence is insufficient to create a fact issue. *See King Ranch, Inc.*, 118 S.W.3d at 750-51 (quoting *Kindred*, 650 S.W.2d at 63) ("Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact."); *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex. 1993) (appellate courts "are not empowered to convert mere suspicion or surmise into some evidence"). Accordingly, we overrule Leslie's fourth issue.

In issues five through fifteen, Leslie argues that the court erred in imposing sanctions for filing the following with the probate court: testamentary capacity and undue influence claims ($40,000), Hamilton Pool property claim ($30,000), defamation claim ($7,000), forgery and formalities claim ($20,000), motions to compel and to set aside ($4,000), affidavits incorporated by reference into summary-judgment response ($5,000), and claims involving Stephen Iler ($3,500). The probate court issued sanctions pursuant to Rules 13 and 215 of the Texas Rules of Civil Procedure, and chapter 10 of the civil practice and remedies code. *See* Tex. R. Civ. P. 13, 215; Tex. Civ. Prac. & Rem. Code Ann. §§ 10.001-.006 (West 2002).

We confine our review of a sanctions order to the grounds specified by the trial court. *See Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 94 n.1 (Tex. 2009); *American Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583-84 (Tex. 2006); *Finlay v. Olive*, 77 S.W.3d 520, 524 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Metzger v. Sebek*, 892 S.W.2d 20, 51 (Tex. App.—Houston [1st Dist.] 1994, writ denied). Rule 13 provides, in relevant part:

16

> The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment.
>
> * * *
>
> "Groundless" for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law.

When determining whether to sanction under Rule 13, the trial court must examine the facts that were available and the circumstances existing when the party filed the challenged pleading, motion, or other paper. *Elkins v. Stotts-Brown*, 103 S.W. 3d 664, 668 (Tex. App.—Dallas 2003, no pet.); *Estate of Davis v. Cook*, S.W.3d 288, 297 (Tex. App.—San Antonio 1999, no pet.); *Emmons v. Purser*, 973 S.W.2d 696, 700 (Tex. App.—Austin 1998, no pet.).

Rule 215 allows a court to impose sanctions for discovery abuse, Tex. R. Civ. P. 215, and chapter 10 of the civil practice and remedies code allows sanctions for filing a pleading or motion "for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation," Tex. Civ. Prac. & Rem. Code Ann. § 10.001.

We review a trial court's imposition of sanctions for an abuse of discretion. *See American Flood Research, Inc.*, 192 S.W.3d at 583; *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). An appellate court may reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. *Cire*, 134 S.W.3d at 838-39.

In deciding whether the imposition of sanctions constitutes an abuse of discretion, we examine the entire record, including the findings of fact and conclusions of law, reviewing the conflicting evidence in the light most favorable to the trial court's ruling and drawing all reasonable inferences in favor of the court's judgment. *In re C.Z.B.*, 151 S.W.3d 627, 636 (Tex. App.—San Antonio 2004, no pet.). As fact finder, the trial court is entitled to evaluate the credibility of the testimony and determine what weight to give it. *Alpert v. Crain, Caton, & James, P.C.*, 178 S.W.3d 398, 412 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). We reverse a decision to impose sanctions only if "the order is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Loeffler v. Lytle Indep. Sch. Dist.*, 211 S.W.3d 331, 347-48 (Tex. App.—San Antonio 2006, pet. denied).

Leslie first argues that the probate court abused its discretion by awarding sanctions on April 21, 2008, after final judgment had already been entered on April 2, 2008. A trial court retains jurisdiction over a case for a minimum of thirty days after signing a final judgment. Tex. R. Civ. P. 329b(d). During this time, the trial court has plenary power, and this plenary power includes the authority to act on a motion for sanctions. *Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 310-11 (Tex. 2000); *Scott & White Mem'l Hosp. v. Schexnider*, 940 S.W.2d 594, 596 (Tex. 1996). Here, the probate court imposed sanctions on April 21, 2008, nineteen days after it rendered final judgment. The probate court acted within its authority by issuing the sanction award before the expiration of its plenary power. *See id.* Accordingly, we overrule Leslie's fifth issue.

18

Finding that the probate court retained jurisdiction to issue sanctions, we next consider Leslie's appeal of sanctions as to her claims for testamentary capacity and undue influence, acreage, defamation, and forgery and formalities. As to each of these sanction awards, Leslie argues that the probate court abused its discretion because "[t]here are no sanctions for improperly 'maintaining' a claim," because there was evidence to support each of these claims, because she sought and was denied discovery that could have supported these claims, and because there is no evidence that she acted in bad faith.

Leslie first asserts that, while there may be sanctions under Rule 13 for bringing a claim, there are no sanctions for "maintaining" a claim. Contrary to Leslie's assertions, for which she cites no authority, it is well-settled that a party acts in bad faith at any time he maintains a claim by continuing to actively pursue that claim after discovery puts him on notice that the claims he is asserting are groundless. *See, e.g.*, *Monroe v. Grider*, 884 S.W.2d 811, 817-18 (Tex. App.—Dallas 1994, writ denied). Even before Leslie filed suit, the evidence showed that her claims were groundless; however, the probate court expressly found Leslie's claims were not groundless *ab initio*. Rather, the probate court found, and the record confirms that, as early as April 13, 2007, discovery revealed that these claims were, indeed, groundless. The Pools actively pursued these claims—filing amended pleadings and other papers—until the claims were finally disposed of by nonsuit or summary judgment on September 14, 2007.

Leslie next asserts that her claims are not frivolous because there was, in fact, evidence to support them. Leslie cites to no evidence to support this assertion, however, and

19

the record shows that the opposite is true—that there was no factual or legal basis to support any of her claims.

As to Leslie's testamentary capacity and undue influence claims, the record includes testimony from Leslie, through which she concedes that she neither questioned Donn's capacity nor contended that he was being unduly influenced until she read his will and learned that he had left everything to his third wife, Marianne, and nothing to her. Further, Leslie testified that, before filing the will contest, Leslie obtained medical records for Donn, none of which showed any evidence of lack of testamentary capacity. In addition, on April 13, 2007, Joe Pool testified that it appeared to him that Leslie had no basis on which to assert her testamentary capacity and undue influence claims. Finally, Leslie's argument that the will itself supports her testamentary capacity and undue influence claims has no basis in law or fact. As previously discussed, Donn's recognition of his stepchildren as part of his family is his prerogative as testator. *See* Tex. Prob. Code Ann. §§ 57, 58; *In re Estate of Clark*, 219 S.W.3d at 514; *In re Estate of Morris*, 577 S.W.2d at 755. Further, Donn's decision to leave all of his property to his wife of twenty-two years is commonplace. And, as noted above, the absence of tax planning, the lack of any specific bequests, errors in page numbering, and a defective residual clause have no bearing on testamentary capacity. *See Long*, 196 S.W.3d at 464; *In re Estate of Grimm*, 180 S.W.3d at 605.

Beyond the will itself and her own bare assertions, Leslie had no evidence to support her testamentary capacity and undue influence claims. Had Leslie and her lawyers conducted a reasonable inquiry into the law and the facts surrounded the will contest, they would have learned that their claims had no basis in law or fact. *See* Tex. R. Civ. P. 13. By mid-April 2007, despite

20

Leslie's and her attorneys' own acknowledgment that they had no basis by which to maintain these claims, and despite Danae's repeated requests to Leslie and her attorneys to dismiss these claims based on evidence that the claims were groundless, Leslie and her attorneys refused to do so. On September 14, 2007, the probate court disposed of the testamentary capacity claim by summary judgment and, on the same day, Leslie nonsuited her undue influence claim.

As to her claim for testamentary capacity, Leslie also argues that she "sought and was denied medical records which could have been evaluated to either support the claim or better educate [her] as to Donn Durio's condition and it's effects." As discussed above, however, the record shows that Danae complied with Leslie's discovery requests. Further, to the extent Leslie believed that documents had not been provided, she could have served Donn's medical providers with subpoenas to obtain these documents. *See* Tex. Prob. Code Ann. § 10B. In addition, at the hearing on the motion for sanctions, Leslie admitted that she had obtained Donn's medical records before filing the will contest, and had found no evidence showing a lack of testamentary capacity.[3]

---

[3]

Q. My question to you was before you filed the lawsuit did you get any medical records about your father around the—dealing with the timeframe of 1994?

A. Yes, we did.

Q. Okay. And did any of those medical records support your claim that he lacked capacity in 1994?

A. No. No, they didn't but I don't believe they're all there.

Q. Okay. And did you—did any of those medical records support your claim that Donn was or could have been unduly influenced in 1994?

A. No, because none of them told me any information I needed to know.

As to Leslie's claim for the Hamilton Pool Road property, Leslie argued that Donn had agreed to hold the property until his death and then devise it through his will to his daughters, Leslie and Danae. Not only does the record evidence contradict Leslie's factual allegation, but, even if true, Leslie's acreage claim is barred as a matter of law by section 59A of the probate code. *See* Tex. Prob. Code Ann. § 59A. A reasonable investigation into the applicable law would have shown as much. *See* Tex. Civ. Prac. & Rem. Code Ann. § 10.001(2). Again, despite Danae's repeated requests to Leslie and her attorneys to nonsuit her acreage claim, Leslie included the claim in her September 7, 2007 second amended will contest. The probate court disposed of Leslie's acreage claim by order of summary judgment on September 14, 2007.

Leslie's defamation claim also has no basis in law or fact. *See* Tex. R. Civ. P. 13. On April 13, 2007, Joe Pool testified that Leslie was no longer asserting the defamation claim and that she had instructed him to drop the claim from the suit. However, the claim was not dropped, despite six letters from Danae requesting that the claim be dropped and notifying Leslie that sanctions would be sought if the claim was not dropped. Indeed, the defamation claim was included in the September 7, 2007 second amended will contest. Even if the claim's inclusion in the second amended will contest was an oversight, as Leslie's attorney asserts, we agree with the probate court that the attorney "should have paid closer attention to the letters from opposing counsel complaining of the continuation (or origination) of the Defamation Claim and should have had his client, Ms. Pool, immediately dismiss the Defamation Claim." Not until March 2008 did Leslie voluntarily nonsuit the defamation claims, and the probate court affirmed the nonsuit with prejudice by order on March 6, 2008.

22

Leslie's forgery and formalities claim, likewise, had no basis in law or fact. *See id.* As previously discussed, because Donn's will was self-proved, Leslie had the burden of presenting some evidence that it was a forgery or that it did not comply with formalities. *See* Tex. Prob. Code Ann. § 84(a); *Tomlinson*, 2008 Tex. App. LEXIS 372, at *19. Leslie offered no evidence to support her claim beyond a list of her own suspicions that led her to conclude that the will might be a forgery, suggesting specifically that the absence of a page number on the first page, the absence of initials on any of the pages, and the failure of the will to flow, indicated that the will was a forgery. Through discovery, rather than gathering evidence to support her claim, Leslie definitively learned that her claims had no basis in law or fact. When deposed, Marianne testified that she and Donn prepared and executed their wills together. A comparison of the two wills shows that they are mirror images, each spouse devising his or her estate to the other. Further, a computer forensic examiner's analysis of the software used by Donn and Marianne to create their wills showed that the software had been used a few weeks before the wills were executed. Further, information stored provided a replication of the drafts that were ultimately executed by Donn and Marianne a few weeks later. In addition, two days after Donn and Marianne executed their wills in 1994, Donn mailed copies of both wills to Danae. A comparison of the copies originally sent to Danae with the will that was offered for probate show that nothing in the will offered for probate had been removed, substituted, or altered in any way. Despite having learned that no evidence supported her claim but, rather, supported the conclusion that Donn's will was not a forgery and complied with formalities, and despite repeated requests by Danae to nonsuit the claim, Leslie persisted in maintaining the

23

forgery and formalities claim in each of her amended will contests until it was disposed of by order of summary judgment on March 6, 2008.

Finally, as to all of these claims—testamentary capacity and undue influence, acreage, defamation, and forgery and formalities—Leslie argues that there is no evidence that she acted in bad faith. As discussed above, however, the evidence shows that Leslie's arguments were groundless both legally and factually and that, by at least mid-April 2007, both Leslie and her attorneys were aware that their claims were groundless. We agree with the probate court that "[t]he bad faith maintenance of [these claims] caused a needless increase in the cost of litigation fees and expenses, and caused substantial damage to [Danae] and [Marianne]." The probate court also expressly found that

> the amounts in sanctions [are] reasonable to punish Ms. Pool and her lawyers for their sanctionable conduct, to deter further abuses, and to compensate Ms. Diana [Danae] and Ms. Durio [Marianne] for the substantial damage they have incurred as a result of that conduct. The court considered lesser sanctions but believes these sanctions are just and appropriate.

Accordingly, we hold that the probate court acted within its discretion in issuing sanctions for the filing of claims for testamentary capacity and undue influence, acreage, defamation, and forgery and formalities, and overrule Leslie's issues eight through twelve. *See Loeffler*, 211 S.W.3d at 347-48 (an order imposing sanctions will be reversed on appeal only if "the order is based on an erroneous view of the law or a clearly erroneous assessment of the evidence"); Tex. R. Civ. P. 13; Tex. Civ. Prac. & Rem. Code Ann. § 10.001.

In her sixth and seventh issues, Leslie argues that the trial court abused its discretion in issuing sanctions against her for filing her motion to compel and her motion to set aside sanctions. As argument, Leslie states merely that "[t]here is no doubt that Appellant was entitled to such documents" and that "[t]here is no evidence of evil intent or frivolous or abusive discovery." Again, Leslie cites neither to evidence nor to legal authority. A review of the record shows that Leslie sought to compel discovery based on inapplicable discovery provisions, repeatedly sought documents in contravention of a signed Rule 11 agreement to suspend discovery pending settlement discussions, and continually harassed Danae and Marianne for documents, despite their cooperation in producing the documents in their possession. The probate court acted within its discretion in concluding that Leslie's filing of the motion to compel and the subsequent motion to set aside were filed in bad faith or for purposes of harassment. *See* Tex. R. Civ. P. 13, 215; *American Flood Research, Inc.*, 192 S.W.3d at 583; *see also* Tex. R. Civ. P. 215.1(d).

In her thirteenth issue, Leslie challenges the probate court's order of sanctions for the filing of the Chilleri and Evans affidavits. Leslie again cites to no authority to support her position but argues that filing the affidavits was not sanctionable conduct because the affidavits "were not proven to be false" and because "there is no evidence that these affidavits were filed in bad faith." The record, however, shows otherwise. Chilleri and Evans testified on multiple occasions that, even before they signed the affidavits, they told Joe Pool, Leslie's attorney, that they had no personal knowledge of how many pages were in the will or whether any pages had been substituted or were missing. Even in the face of this testimony, in her March 6, 2008 summary-judgment response, Leslie attached the affidavits and wrote:

25

> C. Richard Chilleri and Michael Evans testify in their affidavits that the Purported Will that has been filed by Proponent is Missing Pages. . . . The affidavits of C. Richard Chilleri and Michael Evans further state that the page numbering has changed on the pages filed as the Purported Will of Decedent.

Such an assertion was not only improper following the testimony of the affiants disavowing any personal knowledge of the page numbering, but was also a misrepresentation of the express content of the affidavits themselves. In light of the evidence, Leslie had no factual or legal basis for filing her March 6 summary-judgment response, incorporating by reference the Chilleri and Evans affidavits. Accordingly, we find no abuse of discretion in the probate court's order of sanctions and overrule Leslie's thirteenth issue. *See* Tex. R. Civ. P. 13; Tex. Civ. Prac. & Rem. Code Ann. § 10.001; *American Flood Research, Inc.*, 192 S.W.3d at 583.

In her fourteenth and fifteenth issues, Leslie challenges the probate court's award of sanctions with respect to Stephen Iler, Donn's stepson and Marianne's biological son. The will's only specific bequest was a Rolex watch to Iler. Iler filed a disclaimer of his interest in the Rolex watch on March 23, 2007. Because Iler was a beneficiary, Leslie included Iler in her original will contest, filed on December 11, 2006, as well as in her first and second amended contests, filed on March 6, 2007 and September 7, 2007, respectively. Despite Iler's repeated requests for voluntary dismissal from the suit, given that he had no interest in the estate after March 23, 2007, Leslie refused and, indeed, affirmatively included Iler as a party in her second will contest, filed on September 7, 2007. In addition, on November 16, 2009, Leslie propounded discovery on Iler. On November 26, 2007, Iler filed his motion to dismiss and for sanctions for failure to dismiss him from the will contest, along with a motion for protection from discovery. On December 4, 2007, the

probate court signed orders granting Iler's motion to dismiss and imposing sanctions totaling $3,500 on Leslie and her attorneys.[4]

We find no abuse of discretion in the probate court's determination that, following Iler's disclaimer, filed on March 23, 2007, and his repeated requests for a voluntary nonsuit, Leslie's failure to dismiss him and her discovery requests to him were solely for purposes of harassment. *See* Tex. R. Civ. P. 13, 215. Given that Iler had no interest in the estate after March 23, 2007, Leslie's inclusion of Iler in her second amended will contest and Leslie's discovery requests to Iler had no basis in law or fact. *See id.* We find no error in the probate court's sanction awards as to Stephen Iler and, accordingly, overrule Leslie's fourteenth and fifteenth issues. *See Loeffler*, 211 S.W.3d at 347-48.

As a final matter, both Leslie and Danae have filed motions for penalties with this Court. Danae has requested penalties in the amount of $30,000 against Leslie and her counsel, and Leslie has requested penalties in the amount of $15,000 against Danae and her counsel. As discussed in detail above, we have found no abuse of discretion in the probate court's award of sanctions for Leslie's filing of frivolous and groundless claims and pleadings. On appeal, even as Leslie continues to defend the merits of these claims, her briefing is virtually devoid of any legal or evidentiary authority. To the extent that she does cite to authority, that authority is, at best, inapplicable or irrelevant and, at worst, incorrect. As Leslie continues to pursue her groundless claims, Danae has been forced to defend her position, resulting in ever-mounting attorney's fees

---

[4] Although, in their briefing here, the parties state that Iler was voluntarily dismissed after Iler filed his motion on November 26, 2007, the record before us shows only that Iler was dismissed by order of the probate court on December 4, 2007.

27

as well as a significant delay in the administration of Donn's estate—and a waste of judicial resources. Given these circumstances, we grant Danae's motion for penalties and deny Leslie's.

Having overruled each of Leslie's issues, we affirm the judgment of the probate court. We grant Danae's motion for penalties and deny Leslie's motion for penalties.

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop;
   Concurring and Dissenting Opinion by Justice Patterson

Affirmed

Filed:   March 24, 2010