**Affirmed and Memorandum Opinion filed August 18, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00324-CV

---

## IN THE ESTATE OF RAUL HUMBERTO AYALA, SR., DECEASED

---

**On Appeal from the Probate Court No 2**
**Harris County, Texas**
**Trial Court Cause No. 409,268**

---

## M E M O R A N D U M   O P I N I O N

Appellant Raul Humberto Ayala, Jr., contests the validity of a will executed in 2006 by his late father, Raul Humberto Ayala, Sr. Appellant challenges the legal and factual sufficiency of the evidence to support three of the jury's findings. In his first issue, appellant argues the evidence is insufficient for the jury to find the will was properly executed. In his second issue, appellant asserts the evidence is conclusive that the decedent executed the will as a result of undue influence, or that the jury's failure to find undue influence is against the great weight and preponderance of the evidence. In his third issue, appellant contends the evidence

is insufficient to support the jury's finding that the decedent had the testamentary capacity to execute the will. We hold the evidence is legally and factually sufficient to support each of the challenged findings. We therefore affirm the judgment.

## BACKGROUND

In 2000, Raul Humberto Ayala, Sr. (Raul Sr.) executed a will devising all of his stock in the family business, Ayala Quality Foods, Inc., to his son, appellant Raul Humberto Ayala, Jr. Six years later, Raul Sr. executed a new will that is the subject of the present will contest. In the 2006 Will, Raul Sr. devised "all stock owned or hereafter acquired in Ayala Quality Foods, Inc. to [his] daughters, Sandra Wallace Ayala Wied and Martha Enriquetta Ayala Garza, in equal shares." The 2006 Will expressly revoked the 2000 Will and made other, similar changes to the disposition of Raul Sr.'s estate. Appellant was not notified that Raul Sr. executed the 2006 Will.

Following Raul Sr.'s death, Martha filed an application for probate of the 2006 Will, which Sandra supported, and appellant filed an application for probate of the 2000 Will. Evidence was presented during the trial that in the years after Raul Sr. executed the 2000 Will, appellant mistreated Raul Sr. and this mistreatment caused Raul Sr. to execute the 2006 Will. For example, Mario Ramon Garcia, Raul Sr.'s nephew, testified appellant reduced Raul Sr.'s salary by over fifty percent. In addition, Raul Sr. was not allowed to act as an owner of the business. After Raul Sr. suffered a hip injury that put him in the hospital, appellant did not care for him. Instead, appellant took Raul Sr.'s keys to the business and never returned them. According to Mario, Raul Sr. frequently complained about appellant and his wife.

Following the presentation of Martha's and Sandra's case, appellant moved

2

for a directed verdict on the issues of Raul Sr.'s testamentary capacity to make the 2006 Will and due execution of the will. The trial court denied the motion. The jury ultimately found that Raul Sr. had testamentary capacity to sign the 2006 Will and that it met the execution requirements of a valid will. When asked whether Raul Sr. signed the will as a result of undue influence, the jury answered "No." Appellant filed a motion for judgment notwithstanding the verdict, but no ruling on the motion appears in our record. The trial court rendered judgment on the verdict and admitted the 2006 Will into probate. Appellant's motion for new trial was overruled by operation of law. This appeal followed.

ANALYSIS

Appellant challenges the legal and factual sufficiency of the evidence to support three of the jury's findings.

## I.    Standard of review

In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that supports it. *Univ. Gen. Hosp., L.P. v. Prexus Health Consultants, LLC*, 403 S.W.3d 547, 550 (Tex. App.–Houston [14th Dist.] 2013, no pet.). The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *Id.* at 551. We must credit favorable evidence if a reasonable trier of fact could, and disregard contrary evidence unless a reasonable trier of fact could not. *Id.* The trier of fact is the sole judge of the witnesses' credibility and the weight to afford their testimony. *Id.*

When an appellant attacks the legal sufficiency of an adverse finding on an issue on which he did not have the burden of proof, the appellant must demonstrate on appeal that there is no evidence to support the adverse finding. *Id.* at 550. A party attacking the legal sufficiency of an adverse finding on an issue on which he

3

had the burden of proof must demonstrate that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

In reviewing the factual sufficiency of the evidence, we must examine the entire record, considering both the evidence in favor of, and contrary to, the challenged findings. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). The amount of evidence necessary to affirm is far less than the amount necessary to reverse a judgment. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 616 (Tex. App.–Houston [14th Dist.] 2001, pet. denied). This Court is not a factfinder. *Ellis*, 971 S.W.2d at 407. Instead, the jury is the sole judge of the credibility of the witnesses and the weight to afford their testimony. *Pascouet*, 61 S.W.3d at 615–16. Therefore, we may not pass upon the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would also support a different result. *Id.* If we determine the evidence is factually insufficient, we must detail the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict; we need not do so when affirming a jury's verdict. *Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681 (Tex. 2006) (per curiam).

When a party challenges the factual sufficiency of the evidence supporting a finding for which he did not have the burden of proof, we may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Ellis*, 971 S.W.2d at 407; *Nip v. Checkpoint Sys., Inc.*, 154 S.W.3d 767, 769 (Tex. App.–Houston [14th Dist.] 2004, no pet.). When a party attacks the factual sufficiency of an adverse finding on which he bore the burden of proof, he must establish that the finding is against the great weight and

preponderance of the evidence. *Dow Chemical Co.*, 46 S.W.3d at 242.

## II. The evidence is legally and factually sufficient to support the jury's finding that Raul Sr. validly executed the 2006 Will.

In his first issue, appellant alleges the evidence is legally and factually insufficient that the 2006 Will was properly executed. When a contest is filed before the will is admitted to probate, the proponents of the will—in this case, Martha and Sandra—bear the burden of establishing that it was properly executed and that the testator had testamentary capacity. *Croucher v. Croucher*, 660 S.W.2d 55, 57 (Tex. 1983); *In re Estate of Coleman*, 360 S.W.3d 606, 610 (Tex. App.—El Paso 2011, no pet.). To determine whether the 2006 Will was properly executed, the jury was asked:

> Does the document dated June 26, 2006 meet all the following requirements?
>
> 1. The document is in writing; and
>
> 2. The document was signed by the DECEDENT in person; and
>
> 3. The DECEDENT was 18 years of age or older or married or a member of the United State Armed Forces when the document was signed; and
>
> 4. The document was attested by two or more credible persons above the age of fourteen years who signed their names to the document in their own handwriting in presence of the DECEDENT; and
>
> 5. The DECEDENT signed the document with the intent to dispose of his property after his death.

The jury found the 2006 Will satisfied these requirements. We measure the sufficiency of the evidence using the language of this question and the instructions associated with it. *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000).

A copy of the 2006 Will was admitted into evidence, showing that it was in

5

writing. Raul Sr.'s signature appears on pages 5 and 7 of the 2006 Will. Darryl Fitch and Scott Cooper, who both signed the 2006 Will as witnesses, testified that they saw Raul Sr. sign the 2006 Will. Keith Weid, Sandra's husband, also testified that he saw Raul Sr. sign the 2006 Will. Moreover, the signatures on the 2006 Will match the signatures on other evidence admitted during the trial, including the 2000 Will, Raul Sr.'s Mexican Voter ID, his Texas Driver's License, and his Power of Attorney. The record shows that Raul Sr. was above the age of eighteen when he signed the 2006 Will. According to his driver's license and certificate of naturalization, Raul Sr. was born on December 23, 1930.

Two witnesses, Darryl Fitch and Scott Cooper, signed the 2006 Will. Each witness testified at trial and stated that he was at least fourteen years old at the time. Both individuals are credible witnesses because neither is a beneficiary under the 2006 Will. *See Brown v. Taylor*, 210 S.W.3d 648, 661 (Tex. App.— Houston [1st Dist.] 2006, no pet.). Fitch and Cooper testified that they signed the 2006 Will in Raul Sr.'s presence. Mary McFarland and Keith Weid corroborated this testimony.

The testators' intent to dispose of his property is set forth in the instrument itself. The first paragraph states:

> I, Raul Humberto Ayala, Sr., of the County of Harris and the State of Texas, being in good health, of sound mind and memory, do make and declare this instrument to be my Last Will and Testament, hereby expressly revoking all former Wills and Codicils made by me at any time heretofore, and intending hereby to dispose of all the property of whatever kind and wherever situated which I own, or in which I have any kind of interest at the time of my death.

*See Huffman v. Huffman*, 339 S.W.2d 885, 888 (Tex. 1960) (stating that intent of the testator must be determined from the words used in the will).

Appellant argues that there is insufficient evidence that Raul Sr. had the

6

requisite testamentary intent because Martha, not Raul Sr., is the individual who initially contacted Daniel Kasprzak, the attorney who drafted the 2006 Will, and Martha and Sandra were the will's primary beneficiaries. These facts are not evidence of a lack of testamentary intent, however. Although these facts could tend to undermine Martha's and Sandra's credibility with the finder of fact, we do not make credibility determinations under our standard of review for legal and factual sufficiency challenges. *Univ. Gen. Hosp., LP*, 403 S.W.3d at 551; *Pascouet*, 61 S.W.3d at 615–16. The language in the 2006 Will is sufficient evidence to demonstrate testamentary intent.

Appellant argues that Raul Sr. could not read English and thus contends that we should not rely on the language in the 2006 Will as evidence of the testator's intent. Even if evidence of the testator's ability to understand English were necessary to uphold the jury's finding in this case, there is sufficient evidence in the record indicating that Raul Sr. understood some English. Mary McFarland, the notary, stated that she had an extended conversation with Raul Sr. in English during the signing of the 2006 Will. Mario, who had a very close relationship with Raul Sr., testified that Raul Sr. could read English. Sandra also testified regarding Raul Sr.'s ability to understand English, and she noted that Raul Sr. had passed his test for United States citizenship in English. Moreover, Kasprzak testified that he communicated with Raul Sr. in English. He stated that whenever Raul Sr. reached the point where his English language skills inhibited his ability to communicate, a family member was present to translate.

Kasprzak testified that in 2006, he met with Raul Sr. and his two daughters. During the meeting, Raul Sr. stated that he wanted to revoke his 2000 Will and execute a new one. The most significant change was that Raul Sr. wanted to leave his interest in the family business to his daughters. According to Kasprzak, there

7

was no doubt that Raul Sr. intended to change the distribution of his estate. Kasprzak testified that Raul Sr. went through the 2000 Will with him paragraph by paragraph and told Kasprzak what to change and which property should be left to whom. Kasprzak presented diagrams to Raul Sr. in order to verify the requested distribution changes made in the 2006 Will, and Kasprzak testified that Raul Sr. confirmed the diagrams were exactly what he wanted to do. Mario testified regarding the reasons Raul Sr. gave for wanting to change his will, including appellant's treatment of him. This evidence is legally and factually sufficient for the jury to find Raul Sr. had testamentary intent when he signed the 2006 Will. Although there was also contrary testimony regarding appellant's relationship with Raul Sr., it was the jury's role to determine whom to believe.

Appellant next argues that there is insufficient evidence to show the process of executing the will was handled in accordance with the statute. Appellant emphasizes that the notarized copy of 2006 Will contains two different dates, June 26 on the will itself, and June 27 on the self-proving affidavit. Appellant points to inconsistencies in the testimony from the witnesses regarding the notarization of the will. Appellant also asserts that there is insufficient evidence the will was properly executed because McFarland notarized a copy of the self-proving affidavit. We need not address any inconsistencies in the testimony about the notarization and date of the self-proving affidavit, however, because the evidence discussed above supports each element listed in the jury charge without resort to the self-proving affidavit.

Appellant also contends there is insufficient evidence to prove Raul Sr. signed the 2006 Will because testimony revealed that Sandra Wied was capable of signing Raul Sr.'s signature. Appellant states that these "factors raise[] doubts about the authenticity of [Raul Sr.'s] signature." In conducting a legal sufficiency

8

review, however, we must consider the evidence in the light most favorable to the appealed finding and indulge every reasonable inference that supports it. *Univ. Gen. Hosp., L.P.*, 403 S.W.3d at 550. We must credit favorable evidence if a reasonable trier of fact could, and disregard contrary evidence unless a reasonable trier of fact could not. *Id.* at 551. In challenges to the factual sufficiency of the evidence, we may not pass upon the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would also support a different result. *Pascouet*, 61 S.W.3d at 615–16

Appellant asks us to make inferences that contradict the jury's finding and to disregard the evidence, detailed above, indicating that Raul Sr. signed the 2006 Will. He has not argued and cannot show that a reasonable trier of fact could not credit that evidence. In addition, there is no evidence in the record demonstrating that Sandra Wied did in fact forge Raul Sr.'s signature on the 2006 Will. We hold that the evidence was legally and factually sufficient for the jury to conclude the 2006 Will was properly executed. We overrule appellant's first issue.

### III.  The evidence is legally and factually sufficient to support the jury's failure to find that Raul Sr. executed the 2006 Will as a result of undue influence.

In his second issue, appellant argues the evidence is legally and factually insufficient to support the jury's "No" answer to the question whether Raul Sr. executed the 2006 Will as a result of undue influence—a question on which appellant had the burden of proof. Our record does not show that appellant preserved the legal sufficiency portion of his challenge for our review, as it does not contain a ruling on appellant's motion for judgment notwithstanding the verdict. Even if appellant had preserved that portion of his challenge, however, we conclude that the evidence is both legally and factually sufficient to support the jury's answer.

9

A will may be set aside based on undue influence if the contestant proves: (1) the existence and exertion of an influence; (2) the effective operation of such influence so as to subvert or overpower the mind of the testator at the time of the execution of the testament; and (3) the execution of the testament which the maker thereof would not have executed but for such influence.[1] *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963). The burden of proving undue influence is upon the party contesting execution—here, appellant. *Id.* The contestant must introduce some evidence that meets each of the elements of undue influence. *Id.*

Factors that are typically considered in gauging undue influence include: (1) the circumstances surrounding the execution of the instrument; (2) the relationship between the testator and the beneficiary and any others who might be expected recipients of the testator's bounty; (3) the motive, character, and conduct of the persons benefitted by the instrument; (4) the participation by the beneficiary in the preparation or execution of the instrument; (5) the words and acts of the parties; (6) the interest in and opportunity for the exercise of undue influence; (7) the physical and mental condition of the testator at the time of the will's execution, including the extent to which he was dependent upon and subject to the control of the beneficiary; and (8) the improvidence of the transaction by reason of unjust, unreasonable, or unnatural disposition of the property. *See Guthrie v. Suiter*, 934 S.W.2d 820, 831 (Tex. App.—Houston [1st Dist.] 1996, no writ). Undue influence may be established by circumstantial evidence, but such evidence must be probative of the issue and not merely create a surmise or suspicion that such influence existed at the time the document was executed. *Reynolds v. Park*, 485 S.W.2d 807, 813 (Tex. Civ. App.—Amarillo 1972, writ ref'd n.r.e.). Undue influence cannot be inferred by opportunity alone because "[t]here must be some

---

[1] The jury charge on undue influence tracks these elements.

evidence to show that the influence was not only present, but [that it was] in fact exerted with respect to the [execution of the document] itself." *Cotten v. Cotten*, 169 S.W.3d 824, 827 (Tex. App.—Dallas 2005, pet. denied).

In making this challenge, appellant largely asks us to draw inferences contrary to the jury's finding. Because Martha and Sandra are the primary beneficiaries of the 2006 Will, appellant contends they had a motive. Appellant also notes Martha and Sandra had an opportunity to exercise undue influence on Raul Sr.'s dispositions under the 2006 Will, particularly given Raul Sr.'s limited ability to understand English. He also contends that the 2006 Will was an unnatural disposition because it removed the bequests to him in the 2000 Will.

Under our standard of review, however, we must make inferences that support the jury's findings. *Univ. Gen. Hosp., L.P.*, 403 S.W.3d at 550 Moreover, the burden was on appellant to demonstrate undue influence. *Rothermel*, 369 S.W.2d at 922. Appellant's allegations do not constitute evidence that Martha and Sandra did in fact exercise undue influence. Neither Martha nor Sandra was present when Raul Sr. executed the will (though Sandra's husband was), and the witnesses testified that Raul Sr. was not being pressured or manipulated. The jury found that Raul Sr. had testamentary capacity, and the evidence supporting that finding is discussed in Part IV below. In addition, as discussed in Part II above, Kasprzak testified about the manner in which Raul Sr. communicated his wishes, and there was evidence of Raul Sr.'s ability to understand English. The mere possibility that Sandra and Martha exercised undue influence is insufficient to overturn the jury's conclusion because "[t]here must be some evidence to show that the influence was not only present, but [that it was] in fact exerted with respect to the [execution of the document] itself." *Cotten*, 169 S.W.3d at 827.

We hold the evidence is legally sufficient because appellant did not

conclusively establish the successful exercise of undue influence. *Dow Chem. Co.*, 46 S.W.3d at 241. Similarly, we hold the evidence is factually sufficient because appellant has not shown that the jury's failure to find undue influence is against the great weight and preponderance of the evidence. *Id.* at 242. We overrule appellant's second issue.

## IV. The evidence is legally and factually sufficient to support the jury's finding that Raul Sr. had the testamentary capacity to sign the 2006 Will.

In his third issue, appellant challenges the sufficiency of the evidence supporting the jury's finding that Raul Sr. had the testamentary capacity to execute the 2006 Will. To make a last will and testament, a testator must be of sound mind. Tex. Estates Code Ann. § 251.001 (West 2014). This means the testator must have testamentary capacity at the time the will is executed. *In re Neville*, 67 S.W.3d 522, 524 (Tex. App.—Texarkana 2002, no pet.).

The testamentary capacity requirement is satisfied upon proof that the testator has sufficient mental ability to understand he is making a will, the effect of making a will, and the general nature and extent of his property. *Long v. Long*, 196 S.W.3d 460, 464 (Tex. App.—Dallas 2006, no pet.); *In re Neville*, 67 S.W.3d at 524. He must also know his next of kin and natural objects of his bounty and their claims upon him, and have sufficient memory to collect in his mind the elements of the business transacted and hold them long enough to form a reasonable judgment about them.[2] *In re Estate of Blakes*, 104 S.W.3d 333, 336 (Tex. App.—Dallas 2003, no pet.). As noted in appellant's first issue, the proponent of the will bears the burden of establishing that the testator had testamentary capacity. *Croucher*, 660 S.W.2d at 57; *In re Estate of Coleman*, 360

---

[2] The jury charge on testamentary capacity tracks these elements.

S.W.3d at 610.

Appellant contends that Martha and Sandra presented no evidence at trial regarding Raul Sr.'s testamentary capacity on the day he signed the 2006 Will. Appellant argues that the testimony of Raul Sr.'s accountant, Jesse Cantu, demonstrates that Raul Sr.'s mental capacity diminished after he fell during a robbery in 2004. Cantu testified that after the incident, Raul Sr. would occasionally repeat himself or ask non-business questions. According to appellant, Cantu's statements demonstrate that Raul Sr. exhibited obvious signs of diminished mental and physical capabilities. Appellant asserts that Raul Sr. could not articulate the nature of his property because Kasprzak contacted Cantu during the April 2006 meeting, and Cantu informed Kasprzak of Raul Sr.'s ownership interests in the family business and the real property upon which it is located.

We hold the evidence is legally and factually sufficient to support the jury's conclusion that Raul Sr. had testamentary capacity to execute the 2006 Will. Witness Cooper provided the following testimony about the day Raul Sr. executed the Will:

> [Raul Sr.] and I had a conversation in Spanish. Based on my observations of him and my own common sense, it appeared that [Raul Sr.] had sufficient mental ability to understand that he was making a will. It appeared that [Raul Sr.] had sufficient mental ability to understand the effect of his act in making the will. It appeared that [Raul Sr.] had sufficient mental ability . . . to understand the general nature and extent of his property. It appeared that [Raul Sr.] had sufficient mental ability to know his family members and who would be receiving which property under his will. It appeared that [Raul Sr.] had sufficient memory to collect in his mind the elements of the business to be transacted and to be able to hold the elements long enough to perceive their obvious relation to each other and to form a reasonable judgment as to these elements.

As explained above, Kasprzak also met with Raul Sr. about changing his will, Raul

Sr. left Kasprzak with no doubt that he intended to change the distribution of his estate, and Kasprzak prepared diagrams that Raul Sr. confirmed reflected his wishes. Kasprzak described Raul Sr. in 2006 as being "as sharp as he was the day I met him" in 2000. In addition, Mario testified that Raul Sr.'s mental state was normal in 2006, that he knew what property he owned, and that Mario believed he had the mental ability to make a will. This testimony was corroborated by a friend of Raul Sr., Arturo Garcia. Sandra also testified that Raul Sr. had not lost his mental abilities in 2006 and provided examples of his activities, including his ability to pass a test for United States citizenship in 2011.

Thus, even if Cantu's testimony were viewed as some evidence that Raul Sr. lacked testamentary capacity, the jury's finding of capacity is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Ellis*, 971 S.W.2d at 407. In addition, Cooper's testimony alone provides more than a scintilla of evidence supporting the jury's finding. *Univ. Gen. Hosp., LP*, 403 S.W.3d at 551. We therefore overrule appellant's third issue.

## CONCLUSION

Having overruled appellant's three issues, we affirm the trial court's judgment.

/s/    J. Brett Busby
       Justice

Panel consists of Justices Jamison, Busby, and Brown.

14